## COMMONWEALTH OF MASSACHUSETTS

**BRISTOL, SS**

**SUPERIOR COURT**
**DOCKET NO. β13-205**

| | |
|---|---|
| DALE. W. GRISHEY and ) | |
| EDWARD R. GRISHEY, JR., ) | |
|      **Plaintiffs** ) | |
| ) | |
| vs. ) | **VERIFIED COMPLAINT FOR** |
| ) | **INJUNCTIVE RELIEF** |
| OCWEN LOAN SERVICING, LLC, ) | |
| and U.S. BANK NATIONAL ) | |
| ASSOCIATION, AS TRUSTEE FOR ) | |
| THE CMLTI ASSET-BACKED ) | |
| PASS-THROUGH CERTIFICATES, ) | |
| SERIES 2007-AMC3, ) | |
|      **Defendants** ) | |

BRISTOL, SS SUPERIOR COURT
FILED

MAR – 4 2013

MARC J. SANTOS, ESQ.
CLERK/MAGISTRATE

### INTRODUCTION

This is an action for monetary damages and for injunctive relief to prevent the foreclosure sale of a residential property located at 14 Algerine, Berkley, Massachusetts. Defendant Ocwen Loan Servicing, LLC, a mortgage servicer, is proceeding with this foreclosure sale on behalf of Defendant U.S. Bank National Association, as Trustee for the CMLTI Asset-Backed Pass-Through Certificates, Series 2007-AMC3. U.S. Bank as Trustee claims ownership of the secured debt. The foreclosure sale is currently scheduled for Friday, March 15, 2013 at noon on the mortgaged premises.

The impending foreclosure sale is unlawful and unnecessary. Ocwen offered the mortgagors, Plaintiffs Dale and Edward Grishey ("the Grisheys") a permanent loan modification. The Grisheys accepted the offer. They executed and retuned the loan modification agreement to Ocwen. The loan modification reinstates the mortgage and provides for future payments to Ocwen on behalf of U.S. Bank. The Grisheys seek to enforce the terms of their modification agreement.

Plaintiff Edward Grishey is a Vietnam veteran. He has suffered from a seizure disorder since his return from Southeast Asia. In 1971, the Veterans Administration classified him as permanently disabled for service-related causes. Since a car accident in 2010, Mr. Grishey has resided in a Veterans Administration hospital in Brockton, Massachusetts. He suffers from dementia and is unable to manage his financial affairs. In December 2012, his wife, Plaintiff Dale Grishey, obtained a conservatorship order from the Bristol County Family and Probate Court. The order, allows Ms. Grishey, *inter alia*, to execute legal documents on her husband's behalf.

Ocwen is proceeding with this foreclosure sale solely because Ms. Grishey could not obtain the conservatorship order and sign the loan modification agreement for her husband quickly enough to meet a deadline arbitrarily set by Ocwen. Ocwen's actions on behalf of U.S. Bank violate § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, and the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq*. In their interactions with the Grisheys Ocwen and U.S. Bank breached the loan modification contract and the common law covenant of good faith and fair dealing. Both Defendants are liable to the Grisheys for promissory estoppel.

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter and these Defendants pursuant to G.L. c. 233A §3, c. 212 §4, c. 214 §1 and c. 240 §10A.
2. Venue lies in this county pursuant to G.L. 233§§ 1 and 8.

## PARTIES

3. Plaintiff Dale W. Grishey ("Ms. Grishey") is an individual who is the owner of property located at 14 Algerine Street, Berkley, Massachusetts. Ms. Grishey resides at this address.
4. Plaintiff Edward R. Grishey, Jr. ("Mr. Grishey") is an individual who is the co-owner of property located at 14 Algerine Street, Berkley, Massachusetts. Mr. and Ms. Grishey are husband and wife. Ever since he was a passenger in a serious car accident on January 4, 2010, Mr. Grishey has resided on an in-patient basis at the Veterans' Administration Hospital in Brockton, Massachusetts.

2

5. Mr. Grishey lacks competency to bring legal claims on his own behalf. Based on a conservatorship order from the Bristol County Probate and Family Court dated December 21, 2012, Ms. Grishey brings this action on behalf of herself and her husband.

6. Defendant U.S. Bank National Association is a national banking association with its principal place of business in Minneapolis, Minnesota. U.S. Bank operates in a number of states throughout the United States, including in Massachusetts.

7. Defendant Ocwen Loan Servicing, LLC, with its principal place of business in West Palm Beach, Florida, is a commercial loan servicing corporation that operates throughout the United States. Ocwen regularly services loans secured by properties located in Massachusetts.

## STATEMENT OF FACTS

8. Dale and Edward Grishey own their home located at 14 Algerine Street, Berkley, Massachusetts. They are married and built their home in 1982.

9. Edward Grishey is a disabled Vietnam War veteran who has been determined 100% disabled by the Veterans' Administration since 1971. He suffers from a seizure disorder. A car accident in early 2010 exacerbated this condition. Since then, Mr. Grishey has resided in-patient at the Veterans Administration Hospital in Brockton, Massachusetts.

10. Mr. Grishey now suffers from dementia. He is incapable of managing his financial affairs and lacks capacity to understand and execute legal documents. In December 2012, the Bristol County Family and Probate Court approved a conservatorship order allowing Ms. Grishey to act on Mr. Grishey's behalf in legal and financial matters.

11. Ms. Grishey is employed on a part-time basis by Community Care Van, assisting disabled persons by driving them to appointments. She resides at the subject property with her daughter and grandson.

12. In 2010, Ms. Grishey was diagnosed with breast cancer. She has been treated for this illness with chemotherapy and radiation and is currently under medical supervision, being treated with cancer drug therapy. The medication prescribed for her cancer therapy was not covered by her health insurance and she has been required to pay substantial sums out of pocket for this medication.

3

13. In December 2006, the Grisheys re-financed their fixed rate FHA-insured mortgage with a higher-interest rate adjustable rate loan originated by Argent Mortgage Co., LLC. The loan was for the principal amount of $240,000.00.

14. After origination, the Argent loan was securitized. On information and belief, the loan is now part of a pool of loans owned by defendant U.S. Bank National Association, as Trustee for the CMLTI Asset-Backed Pass-Through Certificates Series 2007-AMC3 (hereinafter the entity is referred to "U.S. Bank as Trustee").

15. For all times relevant to this action Ocwen Loan Servicing, LLC has acted as mortgage servicing agent for the U.S. Bank as Trustee.

16. The Grisheys had difficulty meeting their financial obligations after the car accident and Ms. Grishey's cancer diagnosis. As a result, the Grisheys asked Ocwen to modify the mortgage. Since 2010, Ms. Grishey has communicated with staff from Ocwen on many occasions regarding the loan modification.

17. In an effort to facilitate their loan modification request the Grisheys paid approximately $2500 to a firm called "Liberty Credit Law" a business that operates nationally and purports to have expertise in handling loan modification applications. During 2010-2012 various staff of Liberty Credit attempted to assist the Grisheys with their loan modification application with Ocwen.

18. As part of the documentation that she submitted in support of her loan modification request in February 2012, Ms. Grishey gave Ocwen a written verification from the Department of Veterans Affairs, dated February 14, 2012, which verified that Edward Grishey received $2924 per month for his service-connected disability. A copy of this document is hereto attached and incorporated by specific reference as Appendix I.

19. During the course of completing the loan modification application in 2011 and 2012, Ms. Grishey spoke on the telephone several times to Ocwen staff regarding the necessary documentation to complete the application. In these calls, Ms. Grishey repeatedly told Ocwen representatives that her husband had become so disabled after the car accident of January 2010, that he could not properly execute documents on his own behalf.

20. On April 23, 2012, Ocwen notified the Grisheys that they had been approved for a trial plan (TPP) under the Home Affordable Modification Program (HAMP). Ocwen's notice stated,

4

by June 1, 2012, July 1, 2012, and August 1, 2012. A copy of the trial plan document is hereto attached and incorporated by specific reference as Appendix II.

26. The Grisheys made timely payments for their trial payment plan. The Ocwen account statements reflect that they made the required payments on May 30, 2012, June 26, 2012 and July 27, 2012. Copies of these statements are hereto attached and incorporated by specific reference as Appendix III.

27. The Grisheys satisfied all requirements for payments and documentation in order to receive the permanent modification they had been promised.

28. After the Grisheys successfully completed the trial plan, Ocwen sent them a permanent "Home Affordable Modification Agreement" which would modify the terms of their mortgage loan. The mailing was dated August 27, 2012.

29. On or about August 27, 2012 a representative of Ocwen called Ms. Grishey to review the status of her HAMP modification. The Ocwen representative told Ms. Grishey that the only additional paperwork necessary was proof that she was authorized to sign the loan modification agreement for her husband.

30. Ms. Grishey does not recall the specific date when she received the permanent modification document. On one occasion an Ocwen representative stated that the document was mailed on August 28, 2012, and on another occasion that it was mailed on September 13, 2012. The document's cover letter stated that the Grisheys must execute and return the form by September 1, 2012.

31. When the Ocwen representative told Ms. Grishey that she had to provide documentation of her authority to sign the modification agreement on behalf of her husband, Ms. Grishey had only a power of attorney executed by Mr. Grishey earlier in the year. The document had been defectively executed and improperly notarized. In addition, the document was of questionable legal validity because of Mr. Grishey's severely diminished mental status.

32. Based on the recommendation of the personal injury attorney who was representing the Grisheys in connection with the 2010 motor vehicle accident, Ms. Grishey sought a conservatorship order from the Bristol County Probate and Family Court.

33. Shortly after the call from the Ocwen staff representative on or about August 27, 2012, another Ocwen representative contacted Ms. Grishey. This representative told her not to

6

make a $990.07 payment September 2012 because Ocwen did not yet have the required paperwork verifying her authority to execute the loan modification agreement for her husband.

34. On September 20, 2012, Angellos Malefakis, a staff member for Liberty Credit, the company that the Grisheys had paid to assist them with their loan modification application, contacted Ocwen to determine the status of the permanent modification agreement. An Ocwen employee named Manisha stated that any foreclosure action was on hold and that the permanent loan modification agreement had been sent to the Grisheys on September 13, 2012. She could not verify by what method this agreement had been sent.

35. Later on September 20, 2012 Mr. Malefakis of Liberty Credit sent Ocwen an email to confirm that the permanent loan modification agreement had been sent to the Grisheys. Ocwen representative, Tiffany Drexell, replied to this email by calling Liberty Credit. Ms. Drexell confirmed that the Grisheys had been approved for a permanent HAMP modification. They had completed the trial period payments and the final loan modification agreement had been sent to them on August 28, 2012. Ocwen was waiting for the Grisheys to return the executed agreement.

36. Later on September 20, 2012, a Liberty Credit employee, Marie Eschrich, spoke with Ms. Grishey. Ms. Grishey expressed her concern about needing appropriate documentation of her authority to sign the modification agreement on behalf of her husband. Ms. Grishey asked that someone from Liberty Credit call Ocwen to make sure Ocwen was aware of her situation.

37. A Liberty Credit employee, Latasha Warren-Washington, called Liberty Credit on September 20, 2012. Ms. Warren–Washington spoke to "Abashish," an Ocwen representative. Abashish stated that Ocwen could send Ms. Grishey forms that would allow her to execute the HAMP agreement. Ms. Warren-Washington then called Ms. Grishey to notify her of the conversation with Ocwen and that Ocwen said it would be sending Ms. Grishey documents to facilitate execution of the HAMP agreement.

38. During this time, the Grisheys' personal injury attorney pursued judicial proceedings to have Ms. Grishey's appointed her husband's conservator. In order to obtain the appointment, the

7

attorney needed to obtain a medical certificate from the VA Hospital describing Mr. Grishey's disabilities and the medical conditions requiring the conservatorship.

39. On October 9, 2012 Ocwen sent a letter to the Grisheys stating that they had failed to send in the executed permanent loan modification agreement "within the required timeframe" and therefore would be denied the permanent loan modification.

40. On December 21, 2012, the Grisheys' personal injury attorney obtained Ms. Grishey's appointment as conservator for Mr. Grishey. On December 28, 2012 Ms. Grishey received a certified copy of this appointment. A copy of this document is hereto attached and incorporated by specific reference as Appendix IV.

41. On December 28, 2012, as soon as she obtained the certified copy of her conservatorship appointment, Ms. Grishey sent Ocwen, by facsimile reproduction, the executed loan modification agreement. She executed the agreement on Mr. Grishey's behalf and verified her authority to do so by faxing her appointment as her husband's conservator at the same time. A copy of this document is hereto attached and incorporated by specific reference as Appendix V.

42. During December 2012 Ocwen, on behalf of U.S. Bank as Trustee, proceeded to schedule a foreclosure sale of the Grisheys' home. The sale was scheduled for January 2, 2013, then postponed and rescheduled for February 26, 2013 and then postponed again. The foreclosure sale is presently scheduled for March 15, 2013.

43. The Grisheys remain eligible for the permanent HAMP modification with the terms Ocwen approved in August 2012.

44. The Grisheys remain ready, willing, and able to proceed with implementation of the HAMP permanent loan modification. Implementation of the loan modification remains in the best financial interest of the investors who own this loan. They will lose less money if the loan is modified as opposed to being sent through foreclosure.

45. The only reason why Ocwen is proceeding with a foreclosure sale rather than implementing the loan modification is because the Grisheys did not return executed copies of the modification agreement to Ocwen by a deadline date that Ocwen had set with little or no advance notice.

8

46. The Grisheys could not meet the arbitrary deadline because Ms. Grishey did not have court approval to execute legal documents on behalf of her severely disabled husband.

47. Ocwen could easily have made an accommodation to its practices and implemented the modification when it received the appropriately executed documents from the Grisheys in December 2012. Such an accommodation would not have disrupted Ocwen's administration of the HAMP program. It would have involved no material cost to Ocwen. The modification is the better option for investors who own the loan.

48. HAMP rules prohibit participating servicers from foreclosing upon HAMP-eligible borrowers. Making Home Affordable Program, *Handbook for Servicers of Non-GSE Mortgages, Version 4.1* ch. II §§ 2,1, 2.2, 3 (Dec. 13, 2012)

49. In addition, HAMP program rules require compliance with anti-discrimination laws that require parties to take affirmative steps to avoid discriminatory actions. ("Loan modification programs are subject to the fair lending laws, and servicers and lenders should ensure that they do not treat a borrower less favorably than other borrowers on grounds such as race, religion, national origin, sex, marital or familial status, age, *handicap*, or receipt of public assistance income in connection with any loan modification." *Id.* Ch. I, § 1.6 (emphasis added)

50. The rules of the HAMP program specifically allow servicers to make accommodations in their rules and practices to meet the needs of a borrower who is unable to sign documents due to mental incapacity: "Servicers may evaluate requests on a case-by-case basis when the borrower is unable to sign due to circumstances such as mental incapacity, military deployment, etc." *Id.* ch. II § 5.7.

51. Ocwen's refusal to make reasonable accommodations is continuing in that Ocwen has failed to implement the loan modification despite receipt of a properly executed agreement from the Grisheys. Instead of implementing the modification, Ocwen and U.S. Bank as Trustee are proceeding with a foreclosure sale of the Grisheys' home.

## FIRST CAUSE OF ACTION
## VIOLATION OF SECTION 504 OF THE
## REHABILIATION ACT OF 1973

52. Plaintiffs reallege the facts set forth above in paragraphs 3 through 51 and incorporate them by reference as though fully set forth here.

9

53. Plaintiff Edward Grishey, who suffers from physical and mental disabilities as described above, is a disabled individual within the definition of the Section 504 of the Rehabilitation Act of 1973.

54. Defendant Ocwen Loan Servicing, LLC is a commercial loan servicing corporation that participates in the Home Affordable Modification Program (HAMP). The U.S. Department of the Treasury funds the HAMP program. Beginning in 2009 and continuing to the present, Ocwen has received federal funds under the HAMP program in the form of direct incentive payments and other financial subsidies when it modifies home mortgage loans.

55. Section 504 of the Rehabilitation Act states that "[no] otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance...".

56. Mr. and Ms. Grishey are qualified to participate in Ocwen's HAMP program, as evidenced by Ocwen's notice of decision dated August 27, 2012 approving them for a permanent HAMP modification.

57. Ocwen was aware of Mr. Grishey's mental incapacity and the need for Ms. Grishey to acquire signing authority for her husband before October 9, 2012, when Ocwen sent the Grisheys a notice revoking their HAMP modification agreement. Ocwen revoked the agreement solely because it had not been executed by both Mr. and Ms. Grishey.

58. On September 20, 2012, when she was informed of Ms. Grishey's efforts to obtain signing authority for her husband, an Ocwen representative stated that she would send Ms. Grishey documents allowing her to comply with the signing requirements. Ocwen never sent such documents to Ms. Grishey or to any representative of Ms. Grishey.

59. Under the Rehabilitation Act, Ocwen was obligated to make reasonable accommodations in its "policies, practices, or procedures" in order that Mr. Grishey enjoy equal access to the HAMP program through Ocwen.

60. Ocwen would not have incurred a financial or administrative burden or had to fundamentally alter its program if it had extended the timeframe for the Grisheys to return the permanent loan modification agreement. Ocwen need only have waited for Ms. Grishey's appointment

10

as her husband's conservator by the Bristol County Probate and Family Court on December 21, 2012.

61. Ocwen would not incur a financial or administrative burden or fundamentally alter its HAMP program if it implements the Grisheys' modification now.

62. Ocwen is violating the Rehabilitation Act of 1973 in denying the benefits of the HAMP program to the Grisheys and in denying them a reasonable accommodation to allow them meaningful access to its program.

63. By failing to provide a reasonable accommodation for Mr. Grishey's disability, Ocwen has severely interfered with the Grisheys' rights to receive a HAMP loan modification and keep the home they have owned since 1982. This Court is empowered to provide injunctive relief and award damages as remedies for this violation of the Rehabilitation Act.

64. Ocwen has full authority under its servicing agreement with U.S. Bank as Trustee to halt any pending foreclosure sale and execute and implement a permanent HAMP modification with the Grisheys.

## SECOND CAUSE OF ACTION: VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, 42 U.S.C. § 12101, *et seq.*

65. Plaintiffs reallege the facts set forth above in paragraphs 3 through 51 and incorporate them by reference as though fully set forth here.

66. Defendants Ocwen and U.S. Bank as Trustee are entities subject to the Americans with Disabilities Act. At all times relevant to this action Defendant Ocwen acted within the scope of its role as a mortgage servicing agent for Defendant U.S. Bank as Trustee.

67. An entity violates the Americans with Disabilities Act when there is a "failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations." 42 U.S.C. § 12182(b)(2).

68. Servicing of a residential mortgage loan is a "service" within the coverage of the Americans with Disabilities Act.

11

69. In September 2012, Ocwen asked the Grisheys to execute permanent HAMP loan modification documents immediately. Ms. Grishey, through her representative, informed Ocwen of her need to take legal steps to ensure that she could validly execute the documents on behalf of her disabled husband.

70. Authorizing additional time to allow Ms. Grishey to obtain valid signing authority for her disabled husband would not have amounted to an undue financial hardship or administrative burden for Ocwen or U.S. Bank, nor would granting the accommodation have resulted in a fundamental alteration of the rules governing Ocwen's participation in the HAMP program. HAMP rules specifically allow for case-by-case accommodations to obtain a signature on behalf of a borrower who suffers from a mental disability. Making Home Affordable Program, *Handbook for Non-GSE Servicers 4.1* at ch. 2 § 5.7, p. 100.

71. The Grisheys have now provided the validly executed HAMP permanent modification document to Ocwen. To date, Ocwen has failed to inform the Grisheys that it will implement the modification. The sole reason for Ocwen's refusal is that it did not receive the executed document by an earlier date. The Grisheys could not execute the document at the earlier date because of Mr. Grishey's mental incapacity.

72. Ocwen and U.S. Bank as Trustee are proceeding to auction off the Grishey's home at a foreclosure sale despite their eligibility for a HAMP modification.

73. The cancellation of the Grisheys' permanent modification, the failure to implement the modification after receipt of the properly executed documents, and the attempt to sell the home at foreclosure sale are all actions conducted without reasonable accommodations to Mr. Grishey's disability and therefore violate the Americans with Disabilities Act.

74. Plaintiffs are entitled to injunctive relief barring Ocwen and U.S. Bank as Trustee from proceeding with a foreclosure sale and to an order that the defendants implement the HAMP modification for the Grisheys at this time. 42 U.S.C. § 12188(a). In addition, the Defendants are liable to the Grisheys for reasonable attorney's fees under the Americans with Disabilities Act. 42 U.S.C. § 12205.

12

## THIRD CAUSE OF ACTION
## BREACH OF CONTRACT

75. Plaintiffs reallege the facts set forth above in paragraphs 3 through 51 and incorporate them by reference as though fully set forth here.

76. Beginning in 2010, the Grisheys prepared and submitted application documents to Ocwen for a HAMP loan modification.

77. By notice dated April 23, 2012, Ocwen, acting behalf of U.S. Bank as Trustee, offered a HAMP trial loan modification plan to the Grisheys.

78. Ocwen's trial HAMP plan offer provided that, if the Grishey's made timely monthly payments for June, July, and August 2012 and provided any documents needed to confirm their eligibility, they would be granted a permanent HAMP modification calculated under published HAMP financial guidelines similar to those used to calculate the trial plan payments. Ocwen's notice stated, "After all trial period payments are timely made and you have submitted all required documents, your mortgage will be permanently modified."

79. The Grisheys made all required trial payments on time and submitted all documents to Ocwen that were required to entitle them to receive a permanent HAMP modification. By complying with the trial plan terms and all other preconditions for the permanent HAMP modification, the Grisheys accepted Ocwen's offer of a permanent modification and the parties entered into a binding contract.

80. By a notice dated August 27, 2012, Ocwen confirmed that the Grisheys had met the conditions for a permanent HAMP modification and provided the Grisheys with a permanent loan modification agreement it had prepared.

81. The Grisheys' payments and other actions they undertook to meet HAMP program requirements over the two-year application process, constituted consideration for the contract.

82. Any delay by the Grisheys in returning the executed agreement form was not material. As set forth above, Ocwen and U.S. Bank as Trustee had an obligation under anti-discrimination law to deal flexibly with the Grisheys under the circumstances they faced.

83. By failing to implement the permanent HAMP modification, Ocwen and U.S. Bank as trustee breached the contract.

13

84. The Grisheys remain ready, willing, and able to perform under the contract by making ongoing payments to Ocwen and U.S. Bank.

85. The Grisheys have suffered harm and are threatened with additional harm from Defendants' breach. Interest arrearages, costs, and fees have been added to their loan balance. In making trial plan payments they did not pursue other remedies that might have saved their home, such as restructuring their debt in bankruptcy or attempting to sell their home.

86. Ocwen made the offer of the permanent loan modification agreement and the Grisheys accepted Ocwen's offer, only requesting an accommodation to allow Ms. Grishey the opportunity to establish her legal authority to execute the agreement for her husband. Ocwen failed to perform its legal obligations, resulting in a material breach of the contract.

87. As a result of Ocwen's breach, the Grisheys face foreclosure on their home and confront potential homelessness if this foreclosure is not enjoined. The Grisheys therefore seek equitable and legal remedies for Ocwen's and U.S. Bank as Trustee's failure to perform, in breach of the parties' contract.

## FOURTH CAUSE OF ACTION
## BREACH OF THE IMPLIED COVENANT
## OF GOOD FAITH AND FAIR DEALING

88. The Grisheys reallege the facts set forth above in paragraphs 3 through 51 and incorporate them by reference as though fully set forth here.

89. The implied covenant of good faith and fair dealing imposes on each party to the mortgage contract the duty to refrain from doing anything which would render performance of the contract impossible by any act of its own, and also the duty to do everything that the contract presupposes that each party will do to accomplish its purpose.

90. The duty of good faith and fair dealing requires that a foreclosing mortgagee conduct a foreclosure in good faith and with reasonable diligence to protect the interest of the borrower.

91. In agreeing to evaluate the Grisheys for a loan modification Ocwen and U.S. Bank as Trustee agreed to conduct the evaluation in good faith. Both Defendants undertook a duty to negotiate the terms of the modification in good faith.

92. Ocwen and U.S. Bank as Trustee violated the duty of good faith and fair dealing by setting an unreasonably short time frame for the Grisheys to return the executed modification

14

agreement. The timeframe was unduly short, both objectively and under the particular circumstances Mr. and Ms. Grishey faced at the time.

93. As the breaching parties, Ocwen and its principal are liable for all damages proximately resulting from this illegal conduct, including the pending foreclosure the Grisheys now face.

## FIFTH CAUSE OF ACTION
## PROMISSORY ESTOPPEL

94. Plaintiffs reallege the facts set forth above in paragraphs 3 through 51 and incorporate them by reference as though fully set forth herein.

95. Defendant Ocwen, by way of its trial plan agreement, made a representation to the Grisheys that, if they made all trial plan payments, they would receive a permanent HAMP modification.

96. Ocwen made the representations with the intent that the Grisheys would rely on it and make the monthly payments.

97. The Grisheys relied on Ocwen's representation and submitted the monthly payments. Given the language of the trial plan notice, the Grisheys' reliance was reasonable.

98. The Grisheys' reliance was to their detriment. The Grisheys have yet to receive the permanent HAMP modification agreement executed by Ocwen on behalf of its principal U.S. Bank as Trustee. They have lost the opportunity to fund other strategies and to deal with their default to avoid foreclosure.

## SIXTH CAUSE OF ACTION
## INJUNCTIVE AND EQUITABLE RELIEF AND COMPENSATORY
## DAMAGES AND FEES PURSUANT TO G.L. c. 12 §11I

99. Plaintiffs reallege the facts set forth above in Paragraph Nos. 3 through 51 and incorporate them by reference as though fully set forth here.

100. G.L. c. 12 §11I states as follows: "Any person whose exercise or enjoyment of rights secured by the constitution or laws of the United States, or of rights secured by the constitution or laws of the commonwealth, has been interfered with, or attempted to be interfered with, as described in section 11H, may institute and prosecute in his own name and on his own behalf a civil action for injunctive and other appropriate equitable relief as

15

provided for in said section, including the award of compensatory money damages. Any aggrieved person or persons who prevail in an action authorized by this section shall be entitled to an award of the costs of the litigation and reasonable attorneys' fees in an amount to be fixed by the court."

101.Edward Grishey is just such an aggrieved person, who has had his right under federal law to a reasonable accommodation for his disability interfered with by Ocwen by its refusal to extend the timeframe for returning the HAMP permanent loan modification agreement so that his wife could obtain legal authority to execute this agreement on his behalf.

102.The Grisheys hereby assert their right, under G.L. c. 12 §11I to obtain injunctive or other appropriate equitable relief as provided for in said section, including the award of compensatory money damages and, if they prevail in the instant matter, they are entitled to an award of the costs of this litigation and reasonable attorneys' fees in an amount to be fixed by the Court.

## **PRAYER FOR RELIEF**

WHEREFORE, the Plaintiffs pray that this Court:

1.    Accept jurisdiction over this action;

2.    Enter a preliminary injunction, permanent injunction, or any appropriate writ preventing U.S. Bank as Trustee and Ocwen from conducting the foreclosure sale of 14 Algerine Street, Berkley, Massachusetts scheduled for March 15, 2013 or at any later date on the mortgaged premises;

3.    Order Ocwen to enforce the terms of the Home Affordable Modification Agreement, dated August 27, 2012 and reinstate the Grisheys' monthly mortgage payments according to the terms set forth therein;

4.    Enter judgment declaring that Ocwen violated Section 504 of the Rehabilitation Act of 1973 and that Ocwen and U.S. Bank violated the Americans with Disabilities Act in failing to make reasonable accommodations for Mr. Grishey's disability;

5.    Enter judgment declaring that Ocwen and U.S. Bank as Trustee breached the trial and permanent HAMP modification agreements, violated the covenant of good faith and fair dealing, and are liable to the Grisheys for promissory estoppel;

16

6.      Order specific performance of the Defendants' contractual obligations together with other relief required by contract and law, including implementation of permanent HAMP modification for the Grisheys;

7.      Award the Grisheys monetary damages for Ocwen's violation of the Rehabilitation Act of 1973 in denying the benefits of the HAMP program to Mr. Grishey and in denying him a reasonable accommodation to allow him meaningful access to its program;

8.      Award the Grisheys damages for Ocwen's and U.S. Bank as Trustee's breach of contract and violation of the duty of good faith and fair dealing;

9.      Award the Grisheys damages against Ocwen and U.S. Bank as Trustee for promissory estoppel;

10.     Order injunctive or other appropriate equitable relief as provided for in G.L. c. 12 §11I, including the award of compensatory money damages and attorneys' fees for Ocwen's interference with Edward Grishey's exercise or enjoyment of rights secured by the constitution or laws of the United States, or of rights secured by the constitution or laws of the Commonwealth;

11.     Award Plaintiffs reasonable attorneys' fees and costs; and

12.     Grant such other relief as this Court deems just and proper.

Dated: February 26, 2013                 Respectfully Submitted,

                                         Dale W. Grishey and Edward R. Grishey, Jr.,
                                         By their attorney,

                                         SARA M. QUINN, BBO# 554154
                                         South Coastal Counties Legal Services, Inc.
                                         22 Bedford Street, First Floor
                                         Fall River, MA 02720
                                         Tel. (508)676-6265

                                         Attorneys for Plaintiffs

## DEMAND FOR JURY TRIAL

Please take notice that Plaintiffs demand trial by jury on all issues so triable.

17

## **VERIFICATION UNDER OATH**

I, Dale W. Grishey, on my own behalf and in my capacity as conservator for Edward R. Grishey, Jr., hereby swear under the pains and penalties for perjury that I have read the statements set forth in the Complaint above, and that the facts therein are true.

$2-26-2013$      Dale W. Grishey

                             DALE W. GRISHEY

18

**DEPARTMENT OF VETERANS AFFAIRS**
Regional Office
6437 Garners Ferry Rd
Columbia SC 29209

February 14, 2012

DALE GRESHEY
14 ALGERINE ST
BERKLEY MA 02779

In reply, refer to:
NCC/319/DW
C 22 623 605
GRESHEY JR E

Dear Mr. Greshey Jr:

The official records of the Department of Veterans Affairs verify that Edward Greshey Jr receives $2924 per month for a service-connected disability.

## Do You Have Questions Or Need Assistance?

If you have any questions, you may contact us by telephone, e-mail, or letter.

| If you | Here is what to do. |
|---|---|
| Telephone | Call us at 1-800-827-1000. If you use a Telecommunications Device for the Deaf (TDD), the number is 1-800-829-4833. |
| Use the Internet | Send electronic inquiries through the Internet at https://iris.va.gov. |
| Write | Put your full name and VA file number on the letter. Please send all correspondence to the address below. |
| | Boston Regional Office |
| | JFK Federal Building |
| | Government Center |
| | Boston, MA 02203 |
| | FAX: (617) 303-5558 |

Sincerely yours,

*Wayne R. Oswald*

Wayne R. Oswald
National Call Center Manager

APPENDIX I

TRANSMISSION VERIFICATION REPORT

```
TIME  : 02/22/2012 11:15
NAME  : PARCEL&POST PLUS
FAX   : 5008231054
TEL   : 5008231245
SER.# : 000L1N165785
```

```
DATE,TIME        02/22  11:04
FAX NO./NAME     14077376174
DURATION         00:10:39
PAGE(S)          16
RESULT           OK
MODE             STANDARD
                 ECM
```



## DEPARTMENT OF VETERANS AFFAIRS
**Regional Office**
**6437 Garners Ferry Rd**
**Columbia SC 29209**

February 14, 2012

**DALE GRESHEY**
**14 ALGERINE ST**
**BERKLEY MA 02779**

In reply, refer to:
NCC/319/DW
C 22 623 605
GRESHEY JR E

Dear Mr. Greshey Jr:

The official records of the Department of Veterans Affairs verify that Edward Greshey Jr receives $2924 per month for a service-connected disability.

## Do You Have Questions Or Need Assistance?

If you have any questions, you may contact us by telephone, e-mail, or letter.

| If you | Here is what to do. |
|---|---|
| Telephone | Call us at 1-800-827-1000. If you use a Telecommunications Device for the Deaf (TDD), the number is 1-800-829-4833. |
| Use the Internet | Send electronic inquiries through the Internet at https://iris.va.gov. |
| Write | Put your full name and VA file number on the letter. Please send all correspondence to the address below.<br><br>Boston Regional Office<br>JFK Federal Building |

 



OCWEN

4/23/2012

**You may be able to make your payments more affordable!**
**Call 1-800-746-2936 for Immediate Assistance.**

**Loan Number:** 7090247904
**Property Address:** 14 Algerine Street Berkley, MA 02779

Edward Grishey
14 Algerine Street
Berkley, MA 02779

Dear Edward Grishey  ,

**Congratulations!** You are approved to enter into a trial period plan under the Home Affordable Modification Program. This is the first step toward qualifying for more affordable mortgage payments. Please read this letter so that you understand all the steps you need to take to modify your mortgage payments.

**What you need to do...**

To accept this offer, you must make your first monthly "trial period payment." To qualify for a permanent modification, you must make the following trial period payments in a timely manner:

> 1st payment:  $990.07 by 6/1/2012
> 2nd payment:  $990.07 by 07/01/2012
> 3rd payment:  $990.07 by 08/01/2012

After all trial period payments are timely made and you have submitted all the required documents, your mortgage will be permanently modified. (Your existing loan and loan requirements remain in effect and unchanged during the trial period.) **If each payment is not received by Ocwen Loan Servicing, LLC in the month in which it is due, this offer will end and your loan will not be modified under the Making Home Affordable Program.**

**If you have any questions or if you cannot afford the trial period payments shown above but want to remain in your home, or if you have decided to leave your home but still want to avoid foreclosure, please call us at 1-800-746-2936 as we may be able to help you. (Also, please review the attached "Frequently Asked Questions.")**

WILLIAMS, MARCUS has been assigned as your relationship manager and will be your designated representative for resolution inquiries and submission of documents.

Sincerely,

Ocwen Loan Servicing, LLC

Attachments: (1) Frequently Asked Questions and (2) Additional Trial Period Plan Information and Legal Notices

> The *Making Home Affordable Program* was created to help millions of homeowners refinance or modify their mortgages. As part of this program, we – your mortgage servicer – and the Federal Government are working to offer you options to help you stay in your home.

APPENDIX II

1

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is not intended as and does not constitute an attempt to collect a debt.*

**FREQUENTLY ASKED QUESTIONS** Get the answers you need to some of the most common questions.

## Q. What else should I know about this offer?

- If you make your new payments timely **we will not conduct a foreclosure sale.**
- You will not be charged any fees for this trial period plan or a permanent modification.
- If your loan is modified, we will waive all unpaid late charges.
- Your credit score may be adversely affected by accepting a trial period plan. The impact of a permanent modification on a credit score depends on the homeowner's entire credit profile. For more information about your credit score, go to http://www.ftc.gov/bcp/edu/pubs/consumer/credit/cre24.shtm.
- You may be required to attend credit counseling.

## Q. Why is there a trial period?

The trial period offers you immediate payment relief and gives you time to make sure you can manage the lower monthly mortgage payment. The trial period is temporary, and your existing loan and loan requirements remain in effect and unchanged during the trial period.

## Q. How was my new payment in the trial period determined?

Your trial period payment is approximately 31% of your total gross monthly income, which we determined to be $5,823.23 based upon the income documentation you provided. If the loan is successfully modified, your new payment also will be based on 31% of your gross income. In addition, if your existing payment includes mortgage insurance premiums, this amount will also be added to your payment. If we were able to permanently modify your loan today, we estimate your modified interest rate would be 2.000%. Your final modified interest rate may be different.

The modified payment should be sufficient to pay the principal and interest as well as property taxes, insurance premiums and other permissible escrow fees based on our recent analysis of these costs. Your modified monthly payment may change if your property taxes and insurance premiums change. If you did not have an escrow account before, the timing of your tax and insurance bills may require that you make a payment to cover any such bills when they come due. This is known as an escrow shortage. Your loan has an escrow shortage of $1,333.85; this can either be paid in a lump sum when the loan is modified or over the next 60 months in an amount of $022.23 per month in addition to your modified monthly mortgage payment. If you wish to pay the total shortage as a lump sum, please contact us at **1-800-746-2936**.

## Q. When will I know if my loan can be modified permanently and how will the modified loan balance be determined?

Once you make all of your trial period payments on time, we will send you a modification agreement detailing the terms of the modified loan. Any difference between the amount of the trial period payments and your regular mortgage payments will be added to the balance of your loan along with any other past due amounts as permitted by your loan documents. While this will increase the total amount that you owe, it should not significantly change the amount of your modified mortgage payment as that is determined based on your total monthly gross income, not your loan balance.

2

**FREQUENTLY ASKED QUESTIONS**    Get the answers you need to some of the most common questions.

**Q.    Are there incentives that I may qualify for if I am current with my new payments?**

Once your loan is modified, you can earn a pay-for-success incentive for every month that you make on-time payments beginning with the trial period payments. Depending on your modified monthly payment, you may accrue up to $1,000 each year for five years for a maximum of $5,000. This important benefit, *which will be applied to your principal balance each year after the anniversary date of your first trial period payment due date,* will help you earn equity in your home by reducing the amount that you owe. However, you must remain current on your loan. You will lose this benefit if your modified loan loses good standing, which means that the equivalent of three full monthly payments are due and unpaid on the last day of any month, at any time during this five year period. If you lose this benefit, you will lose all accrued, unapplied incentive payments.

In addition, once your loan is permanently modified, you may be eligible to have some of your principal forgiven on a deferred basis. So long as your modified loan remains in good standing, we will forgive $28,759.92 of the principal balance of your loan each year on the anniversary of your first trial period payment date for three years. You will lose this benefit if your modified loan loses good standing at any time during this three year period, including all accrued and unapplied amounts. Any principal forgiveness will be reported to the Internal Revenue Service and may have tax consequences. Therefore, you are advised to seek guidance from a tax professional. Please contact us at **1-800-746-2936** if you do not want principal forgiveness, we may have other modification options for you.

**Q.    Will my interest rate and principal and interest payment be fixed after my loan is permanently modified?**

Once your loan is modified, your interest rate and monthly principal and interest payment will be fixed for the life of your mortgage **unless** your initial modified interest rate is below current market interest rates. In that case, the below market interest rate will be fixed for five years. At the end of the fifth year, your interest rate may increase by 1% per year until it reaches a cap. The cap will equal the market rate of interest being charged by mortgage lenders on the day your modification agreement is prepared (the Freddie Mac Primary Mortgage Market Survey® rate for 30-year fixed-rate conforming mortgages). Once your interest rate reaches the cap, it will be fixed for the remaining life of your loan. Your new monthly payment will include an escrow for property taxes, hazard insurance and other escrowed expenses. If the cost of your homeowners insurance, property tax assessment or other escrowed expenses increases, your monthly payment will increase as well.

**Q.    What if I have other questions about a Home Affordable Modification that cannot be answered by my mortgage servicer?**



Call the Homeowner's HOPE™ Hotline at **1-888-995-HOPE (4673).** This Hotline can help with questions about the program and offers access to free HUD-certified counseling services in English and Spanish.

**Q.    What if I am aware of fraud, waste, mismanagement or misrepresentations affiliated with the Troubled Asset Relief Program?**

Please contact SIGTARP at 1.877.SIG.2009 (toll-free), 202.622.4559 (fax) or www.sigtarp.gov and provide them with your name, our name as your servicer, your property address, loan number and reason for escalation. Mail can be sent to: Hotline Office of the Special Inspector General for Troubled Asset Relief Program, 1801 L Street NW, Washington, DC 20220.

3

 **IMPORTANT PROGRAM INFO** Here's additional information you need to know about the Home Affordable Modification Program.

## Additional Trial Period Plan Information and Legal Notices

The terms of your trial period plan below are effective on the day you make your first trial period payment, provided you have paid it on or before 6/30/2012. You and we agree that:

**We will not proceed to foreclosure sale during the trial period, provided you are complying with the terms of the trial period plan**

- Any pending foreclosure action or proceeding that has been suspended may be resumed if you are notified in writing that you failed to comply with the terms of the trial period plan or do not qualify for a permanent modification.

- You agree that the servicer will hold the trial period payments in an account until sufficient funds are in the account to pay your oldest delinquent monthly payment. You also agree that the servicer will not pay your interest on the amounts held in the account. If any money is left in this account at the end of the trial period plan, those funds will be deducted from amounts that would otherwise be added to your modified principal balance.

- The servicer's acceptance and posting of your new payment during the trial period will not be deemed a waiver of the acceleration of your loan (or foreclosure actions) and related activities, and shall not constitute a cure of your default under your loan unless such payments are sufficient to completely cure your entire default under your loan.

**If your monthly payment did not include escrows for taxes and insurance, you are now required to do so:**

- You agree that any prior waiver that allowed you to pay directly for taxes and insurance is revoked. You agree to establish an escrow account and to pay required escrows into that account.

**Your current loan documents remain in effect; however, you may make the trial period payment instead of the payment required under your loan documents:**

- You agree that all terms and provisions of your current mortgage note and mortgage security instrument remain in full force and effect and you will comply with those terms; and that nothing in the trial period plan shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the loan documents.

**If your loan is in an active Chapter 7 or Chapter 13 Bankruptcy case, in order for us to finalize your modification you must make all of your trial payments and obtain approval from the Bankruptcy court. The approval or consent order is required BEFORE Ocwen can covert your trial plan into a permanent modification.**

### PAYMENT REMITTANCE INFORMATION
### PLEASE DON'T FORGET TO:
1. Make checks payable to Ocwen Loan Servicing, LLC.
2. Always include your loan number with your payment.
3. The down payment must be in the form of certified funds.

**OVERNIGHT DELIVERY**
(Money Order & Certified Checks Only)
OCWEN LOAN SERVICING, LLC
ATTN: CASHIERING DEPARTMENT
1661 Worthington Road, Suite 100
West Palm Beach, FL 33409

**BANK WIRE**
**BANK:** Wells Fargo Bank, NA
**ABA:** 121000248
**ACCOUNT NAME:** OCWEN Loan Servicing, LLC in Trust
for Various Investors and Mortgagors
**ACCOUNT NUMBER:** 4124823352
**REFERENCE:** Loan Number, Property Address, and
Borrower Name
**Email:** Transferfunds@ocwen.com with the details of
the wire

**MONEY GRAM**
**RECEIVER CODE:** 2355
PAYABLE TO: OCWEN LOAN SERVICING, LLC

**WESTERN UNION**
**CITY:** ORLANDO
**STATE:** FLORIDA
REFERENCE: LOAN NUMBER 7090247904
**AGENT LOCATER:** (800) 926-9400
**BY WUQC**
Code City: Ocwen
State: FL
Reference: Loan # 7090247904



**Ocwen Loan Servicing, LLC**
www.ocwen.com

**O C W E N**

NMLS # : 1852
NJ Permit No. 3846

**CUSTOMER RELATIONS 1-800-746-2936**
Your call may be recorded for the coaching
and development of our associates.

EDWARD GRISHEY
14 ALGERINE STREET
BERKLEY MA  02779-2100



## Account Statement

| | |
|---|---|
| **Account Number:** | 7090247904 |
| **Account Statement Date:** | 06/18/2012 |
| **Property Address:** | |
| 14 Algerine Street | |
| Berkley MA 02779 | |
| | Page 1 |

## Special Notices

Accidents happen everyday. Be prepared to protect your home and financial security. Call 1-800-348-7569 to enroll in accidental death and disability insurance.

## Account Information

| | |
|---|---|
| * Current Principal Balance: | 244,391.54 |
| Interest Rate: | 7.00000% |
| Contractual Due Date: | 04/01/2010 |
| Forbearance Due Date: | 07/01/2012 |
| Escrow Advance Balance: | -5,525.51 |
| Current Suspense Balance: | 933.15 |
| Interest Paid Year-To-Date: | .00 |
| Taxes Paid Year-To-Date: | 1,006.76 |
| Beginning Principal Balance: | 244,391.54 |
| Beginning Escrow Balance: | -5,525.51 |
| Escrow Disbursements/Adjustments | -1,006.76 |
| Recently Assessed Amounts: | |
| May- 2012 Late Charges: | 50.49 |
| June- 2012 Late Charges: | 50.49 |

*This is the principal balance only, not the amount required to pay your account in full.

## Details of Amount Due

| | |
|---|---|
| Current Amount Due: | |
| Current Forbearance Payment Due by 07/01/12: | 990.07 |
| Total Amount Due: | 990.07 |
| Assessed Fees/Expense Outstanding: | |
| Info Only - Late Charges: | 1,211.76 |
| Info Only - Prev-Foreclosure Cost: | 255.00 |
| Info Only - Prev-Foreclosure Fee: | 650.00 |
| Info Only - Prev-Prior Servicer Fees: | 1,587.13 |
| Info Only - Prev-Property Inspection Fee: | 21.00 |
| Info Only - Prev-Property Valuation Expense: | 109.00 |
| Info Only - Prev-Title Report Fee: | 315.00 |
| Total Fees/Expense Outstanding: | 4,148.89 |

## Recent Account Activity

| Date | Description | Principal | Interest | Escrow | Optional | Late Charges | Fees/Other | Suspense | Total |
|---|---|---|---|---|---|---|---|---|---|
| 05/30/12 | Forbearance Payment | .00 | .00 | .00 | .00 | .00 | .00 | 990.07 | 990.07 |

## Important Messages

We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report. To obtain information about your rights under the Fair Credit Reporting Act go to        www.ftc.gov/credit .

If you are currently in bankruptcy or if you have filed for bankruptcy since obtaining this loan, please read the bankruptcy information provided on the back of this statement.

Our records indicate that your loan is in foreclosure. Accordingly, this statement may be for informational purposes only.


FOLD AND
DETACH HERE

PLEASE DETACH AND RETURN BOTTOM PORTION WITH PAYMENT IN THE ENCLOSED ENVELOPE WITH ADDRESS VISIBLE.
PLEASE DO NOT SEND CORRESPONDENCE WITH YOUR PAYMENT - ALWAYS WRITE YOUR ACCOUNT NUMBER ON YOUR CHECK.

FOLD AND
DETACH HERE

00000990077  4444444881  000007090247904  50  000990077

**O C W E N**

## Payment Coupon

| | | |
|---|---|---|
| **AMOUNT DUE** | $ | 990.07 |
| If received after 07/16/2012 add Late Charge of: | $ | 0.00 |
| Total Amount Due with Late Charge: | $ | 990.07 |
| Additional Principal: | $ | |
| Additional Escrow: | $ | |
| Late Charges: | $ | |
| Other: (Please Specify) | $ | |
| Total Enclosed: | | |

Note: If your loan is current, any excess funds will first be applied to outstanding amounts due and then additional principal.

If this payment is made via automatic drafting, this statement is for informational purposes only.

EDWARD GRISHEY

Account Number: 7090247904

Check box if your contact information
has changed, update on the back



OCWEN
PO BOX 6440
CAROL STREAM IL 60197-6440

— APPENDIX III



**Ocwen Loan Servicing, LLC**
www.ocwen.com

OCWEN

NMLS # : 1852
HC Permit No 3546
**CUSTOMER RELATIONS 1-800-746-2936**
Your call may be recorded for the coaching
and development of our associates.

EDWARD GRISHEY
14 ALGERINE STREET
BERKLEY MA  02779-2100



| **Account Statement** | |
|---|---|
| **Account Number:** | 7090247904 |
| **Account Statement Date:** | 07/17/2012 |
| **Property Address:** | |
| 14 Algerine Street | |
| Berkley MA 02779 | |
| | Page 1 |

**Special Notices**

Accidents happen everyday. Be prepared to protect your home and financial
security. Call 1-800-348-7569 to enroll in accidental death and disability
insurance.

---

**Account Information**

| | |
|---|---|
| * Current Principal Balance: | 244,134.00 |
| Interest Rate: | 7.00000% |
| Contractual Due Date: | 05/01/2010 |
| Forbearance Due Date: | 08/01/2012 |
| Escrow Advance Balance: | -5,484.85 |
| Current Suspense Balance: | 780.74 |
| Interest Paid Year-To-Date: | 1,425.62 |
| Taxes Paid Year-To-Date: | 1,415.49 |
| Beginning Principal Balance: | 244,391.54 |
| Principal Reductions Year-To-Date: | 257.54 |
| Beginning Escrow Balance: | -4,518.75 |
| Escrow Deposits/Adjustments | 449.39 |
| Escrow Disbursements/Adjustments | -1,415.49 |
| Recently Assessed Amounts: | |
| June- 2012 Late Charges: | 50.49 |
| July- 2012 Late Charges: | 50.49 |
| 07/13/12 Foreclosure Fee: | 1,250.00 |
| 07/13/12 Foreclosure Cost: | 4,474.23 |

*This is the principal balance only, not the amount required to pay your account in full.

**Details of Amount Due**

| | |
|---|---|
| **Current Amount Due:** | |
| Current Forbearance Payment Due by 08/01/12: | 990.07 |
| Total Amount Due: | 990.07 |
| Assessed Fees/Expense Outstanding: | |
| Info Only - Late Charges: | 1,262.25 |
| Info Only - Curr-Foreclosure Cost: | 4,474.23 |
| Info Only - Prev-Foreclosure Cost: | 255.00 |
| Info Only - Curr-Foreclosure Fee: | 1,250.00 |
| Info Only - Prev-Foreclosure Fee: | 650.00 |
| Info Only - Prev-Prior Servicer Fees: | 1,587.13 |
| Info Only - Prev-Property Inspection Fee: | 21.00 |
| Info Only - Prev-Property Valuation Expense: | 109.00 |
| Info Only - Prev-Title Report Fee: | 315.00 |
| Total Fees/Expense Outstanding: | 9,923.61 |

---

**Recent Account Activity**

| Date | Description | Principal | Interest | Escrow | Optional | Late Charges | Fees/Other | Suspense | Total |
|---|---|---|---|---|---|---|---|---|---|
| 06/26/12 | Forbearance Payment | .00 | .00 | .00 | .00 | .00 | .00 | 990.07 | 990.07 |
| 06/26/12 | Payment | 257.54 | 1,425.62 | 449.39 | .00 | .00 | .00 | -2,132.55 | .00 |
| 07/12/12 | Tax Disbursement | .00 | .00 | -408.73 | .00 | .00 | .00 | .00 | -408.73 |
| | BERKLEY TOWN | .00 | .00 | .00 | .00 | .00 | .00 | .00 | .00 |

---

**Important Messages**

We may report information about your account to credit bureaus.  Late payments, missed payments, or other defaults on your account may be reflected
in your credit report.  To obtain information about your rights under the Fair Credit Reporting Act go to          www.ftc.gov/credit .

If you are currently in bankruptcy or if you have filed for bankruptcy since obtaining this loan, please read the bankruptcy information provided on the back
of this statement.

Due to the status of your loan, fee(s) or charge(s) have recently been added.  Please review the enclosed fee description page for
explanation of these and any other fee(s) or charge(s).
Our records indicate that your loan is in foreclosure. Accordingly, this statement may be for informational purposes only.

---

FOLD AND
DETACH HERE          PLEASE DETACH AND RETURN BOTTOM PORTION WITH PAYMENT IN THE ENCLOSED ENVELOPE WITH ADDRESS VISIBLE          FOLD AND
          PLEASE DO NOT SEND CORRESPONDENCE WITH YOUR PAYMENT - ALWAYS WRITE YOUR ACCOUNT NUMBER ON YOUR CHECK.          DETACH HERE

---

00000990077  4444444881  000007090247904  50  000990077

OCWEN

**Payment Coupon**

EDWARD GRISHEY

**Account Number: 7090247904**

Check box if your contact information
has changed, update on the back

| | | |
|---|---|---|
| **AMOUNT DUE** | $ | 990.07 |
| If received after 08/16/2012 add Late Charge of: | $ | 0.00 |
| Total Amount Due with Late Charge: | $ | 990.07 |
| Additional Principal: | $ | |
| Additional Escrow: | $ | |
| Late Charges: | $ | |
| Other: (Please Specify) | $ | |
| Total Enclosed: | | |

Note:  If your loan is current, any
excess funds will first be applied to
outstanding amounts due and then
additional principal.

If this payment is made via
automatic drafting, this statement
is for informational purposes only.

OCWEN
PO BOX 6440
CAROL STREAM IL 60197-6440



Ocwen Loan Servicing, LLC
• www.ocwen.com

**OCWEN**

NMLS # : 1852
NC Permit No. 7665
**CUSTOMER RELATIONS 1-800-746-2936**
*Your call may be recorded for the coaching
and development of our associates.*

13998 13 34.4  960591 JN3988I HHZENO OCHTHETM 1 OE ECM HHAZR4993P 14661  WE

EDWARD GRISHEY
14 ALGERINE STREET
BERKLEY MA  02779-2100



## Account Statement

| | |
|---|---|
| **Account Number:** | 7090247904 |
| **Account Statement Date:** | 08/17/2012 |
| **Property Address:** | |
| 14 Algerine Street | |
| Berkley MA 02779 | |

Page 1

## Special Notices

Accidents happen everyday. Be prepared to protect your home and financial
security. Call 1-800-348-7569 to enroll in accidental death and disability
insurance.

## Account Information

| | |
|---|---|
| * Current Principal Balance: | 244,134.00 |
| Interest Rate: | 7.00000% |
| Contractual Due Date: | 05/01/2010 |
| Forbearance Due Date: | 09/01/2012 |
| Escrow Advance Balance: | -5,484.85 |
| Current Suspense Balance: | 780.74 |
| Interest Paid Year-To-Date: | 1,425.62 |
| Taxes Paid Year-To-Date: | 1,415.49 |
| Beginning Principal Balance: | 244,391.54 |
| Principal Reductions Year-To-Date: | 257.54 |
| Beginning Escrow Balance: | -4,518.75 |
| Escrow Deposits/Adjustments | 449.39 |
| Escrow Disbursements/Adjustments | -1,415.49 |
| Recently Assessed Amounts: | |
| July- 2012 Late Charges: | 50.49 |
| August- 2012 Late Charges: | 50.49 |
| 07/13/12 Foreclosure Fee: | 1,250.00 |
| 07/13/12 Foreclosure Cost: | 4,474.23 |

*This is the principal balance only, not the amount required to pay your account in full

## Details of Amount Due

| | |
|---|---|
| Current Amount Due: | |
| Current Forbearance Payment Due by 09/01/12: | 990.07 |
| Total Amount Due: | 990.07 |
| Assessed Fees/Expense Outstanding: | |
| Info Only - Late Charges: | 1,312.74 |
| Info Only - Prev-Foreclosure Cost: | 4,729.23 |
| Info Only - Prev-Foreclosure Fee: | 1,900.00 |
| Info Only - Prev-Prior Servicer Fees: | 1,587.13 |
| Info Only - Prev-Property Inspection Fee: | 21.00 |
| Info Only - Prev-Property Valuation Expense: | 109.00 |
| Info Only - Prev-Title Report Fee: | 315.00 |
| Total Fees/Expense Outstanding: | 9,974.10 |

| Date | Description | Principal | Interest | Escrow | Optional | Late Charges | Fees/Other | Suspense | Total |
|---|---|---|---|---|---|---|---|---|---|
| 07/27/12 | Forbearance Payment | .00 | .00 | .00 | .00 | .00 | .00 | 990.07 | 990.07 |

We may report information about your account to credit bureaus.  Late payments, missed payments, or other defaults on your account may be reflected
in your credit report.  To obtain information about your rights under the Fair Credit Reporting Act go to          www.ftc.gov/credit .

If you are currently in bankruptcy or if you have filed for bankruptcy since obtaining this loan, please read the bankruptcy information provided on the back
of this statement.

Our records indicate that your loan is in foreclosure. Accordingly, this statement may be for informational purposes only.

FOLD AND
DETACH HERE        PLEASE DETACH AND RETURN BOTTOM PORTION WITH PAYMENT IN THE ENCLOSED ENVELOPE WITH ADDRESS VISIBLE.        FOLD AND
DETACH HERE
                   PLEASE DO NOT SEND CORRESPONDENCE WITH YOUR PAYMENT - ALWAYS WRITE YOUR ACCOUNT NUMBER ON YOUR CHECK.

00000990077 4444444881 000007090247904 50 000990077



**OCWEN**

### Payment Coupon

| | | |
|---|---|---|
| **AMOUNT DUE** | $ | 990.07 |
| If received after 09/16/2012 add Late Charge of: | $ | 0.00 |
| Total Amount Due with Late Charge: | $ | 990.07 |
| Additional Principal: | $ | |
| Additional Escrow: | $ | |
| Late Charges: | $ | |
| Other: (Please Specify) | $ | |
| Total Enclosed: | | |

Note:  If your loan is current, any
excess funds will first be applied to
outstanding amounts due and then
additional principal.

If this payment is made via
automatic drafting, this statement
is for informational purposes only.

**EDWARD GRISHEY**

**Account Number: 7090247904**

Check box if your contact information
has changed, update on the back



OCWEN
PO BOX 6440
CAROL STREAM IL 60197-6440

| **LETTERS OF CONSERVATORSHIP FOR A PROTECTED PERSON** | Docket No. BR12P1948PM | **Commonwealth of Massachusetts** **The Trial Court** **Probate and Family Court** |
|---|---|---|

| In the Interests of: | | | **Bristol** | **Division** |
|---|---|---|---|---|
| **Edward** | **R.** | **Grishey** | Office of the Register Suite 240 | |
| First Name | Middle Name | Last Name | **40 Broadway Street** | |
| | | | **Taunton, MA 02780** | |
| **Protected Person** | | | **(508) 977-6040** | |

I,        **Gina L. DeRossi**        , Register of Probate for the County of    **Bristol**

hereby certify that

|  | **Dale W. Grishey** | of | | **Berkley** | **MA** |
|---|---|---|---|---|---|
| | (name) | | | (City/Town) | (State) |

was/were appointed on _____ **December 21, 2012** _____    as:
          (date)

☒ Conservator pursuant to G.L. c. 190B, §5-401. The appointment is a determination that the Protected Person is disabled

for reasons   ☐ of minority   ☒ other than minority. The Conservator may exercise the powers conferred by G.L. c.

190B, §§5-423 c(1-7) and (14-29) unless limited below and such other powers as are specified in the Decree and Order of Appointment.

☐ The Conservator was appointed before July 1, 2009 as Guardian of the Estate.

☐ Temporary Conservator pursuant to G.L. c. 190B, §5-412A (b). The appointment is NOT a final determination of the

Protected Person's incapacity pursuant to G.L. c. 190B, §5-101(9) or disability pursuant to G.L. c. 190B, §5-401(c). The Temporary Conservator may exercise ONLY the powers granted in the Order of Appointment.

**THESE LETTERS EXPIRE ON** _____ .
                                                        (date)

☐ Special Conservator pursuant to G.L. c. 190B, §5-412A (c). The appointment is NOT a final determination of the

Protected Person's incapacity pursuant to G.L. c. 190B, §5-101(9) or disability pursuant to G.L. c. 190B, §5-401(c). The Special Conservator may exercise ALL and ONLY the powers granted to the Conservator in the Decree and/or Order of Appointment dated _____ .
                                (date)

**THESE LETTERS EXPIRE ON** _____ . The authority of the previously
                                                        (date)

appointed Conservator is suspended until the expiration of the Letters of Special Conservator.

☐ Special Conservator pursuant to G.L. c. 190B, §5-408 (c). The appointment is NOT a final determination of the

Protected Person's incapacity pursuant to G.L. c. 190B, §5-101(9) or disability pursuant to G.L. c. 190B, §5-401(c). The Special Conservator may exercise ONLY the powers granted in the Order of Appointment. **THESE LETTERS EXPIRE UPON THE DISCHARGE OF THE SPECIAL CONSERVATOR BY SEPARATE ORDER OF THE COURT.**

These Letters confirm the transfer of the property of the Protected Person to the named Conservator as fiduciary except for the following:

These Letters confirm the named Conservator's authority to act with regard to the property and business interests of the Protected Person except for the following limitations: ▬▬▬▬▬▬▬▬▬▬▬ ▬

APPENDIX IV    __

|  |  |  |  | Docket No. |
|---|---|---|---|---|
| In the Interests of: | **Edward**<br>First Name | **R.**<br>Middle Name | **Grishey**<br>Last Name | **BR12P1948PM** |

These Letters confirm that the named Conservator has accepted appointment by filing a bond approved by the Court containing a statement of acceptance of the duties of the office.

☐ The Protected Person died on _____ . The Conservator has acquired all of the
                                             (date)
powers and duties of a Personal Representative.  (See separate Decree, Docket No. _____ ).

## CERTIFICATION

I further certify that it appears by the records of this Court that said appointment remains in full force and effect.

IN TESTIMONY WHEREOF I have hereunto set my hand and affixed the seal of said Court,

Date **December 28, 2012** _____

REGISTER OF PROBATE

# PARCEL & POST PLUS.

PHONE: 508·823·1245

FAX: 508·823·1854

## FACSIMILE TRANSMITTAL SHEET

TO
OcWen LoanServicing **LLC**
COMPANY

FROM
EdwardRGrishey JR.
DATE
12-28-2012

FAX NUMBER
407-737-6375

TOTAL NO OF PAGES INCLUDING COVER

PHONE NUMBER

SENDER'S REFERENCE NUMBER

RE

YOUR REFERENCE NUMBER
709024790 4

( URGENT    ( FOR REVIEW    ( PLEASE COMMENT    ( PLEASE REPLY    ( PLEASE RECYCLE

NOTES/COMMENTS.

Please update the record for Home Modoration
Thank you
Edward R Grishey JR.
Dale Grishey

306 Winthrop Street
Taunton, MA 02780

APPENDIX V

413-523-7737 (ScoTT)



O C W E N
8/27/2012

*Ocwen Loan Servicing, LLC*
HELPING HOMEOWNERS IS WHAT WE DO!™
WWW.OCWEN.COM

**Loan Number:** 7090247904
**Property Address:** 14 Algerine Street Berkley, MA 02779

Edward Grishey
14 Algerine Street
Berkley, MA 02779

**Congratulations!** You are eligible for a Home Affordable Modification. As previously described, if you comply with the terms of the Home Affordable Modification Trial Period Plan, we will modify your mortgage loan and waive all prior late charges that remain unpaid.

The enclosed Home Affordable Modification Agreement ("Modification Agreement") reflects the proposed terms of your modified mortgage.

**How to Accept This Offer:**

**STEP 1** **COMPLETE THE ENCLOSED AGREEMENT**

To accept this offer, <u>you must sign and return both copies</u> of the Modification Agreement to us before 9/1/2012. If the Modification Agreement has notary provisions at the end, you must sign both copies before a notary public and return the notarized copies to us. We encourage you to <u>make a copy</u> of all documents for your records. If you do not send both signed copies of the Modification Agreement by the above date, you must contact us if you still wish to be considered for this program and have your loan modified.

**STEP 2** **MAKE YOUR TRIAL PERIOD PAYMENTS ON TIME**

Your trial period payments in the amount of $000.00 will be due on or before the dates provided within the Trial Period Plan. <u>Be certain to make all trial period payments on or before their dates.</u> If the trial period payments are made after their due dates or in amounts different from the amount required, your loan may not be modified. To ensure that your payments are made on time, please consider enrolling in our free Automatic Clearing House (ACH) program. The ACH program allows you to make automatic monthly payment withdrawals without writing any checks. You can fill out the ACH application included with this agreement or simply log in to your account online at www.ocwencustomers.com with your User ID and Password and click on the Automatic Payment Withdrawal link.

**STEP 3** **RETURN BOTH COPIES OF MODIFICATION AGREEMENT**

**MAIL TO:**
OCWEN LOAN SERVICING, LLC
ATTN: HAMP MODIFICATIONS
1661 WORTHINGTON ROAD, SUITE100
WEST PALM BEACH, FLORIDA 33409

To understand the proposed terms of your modified mortgage, we urge you to read the attached summary of your modified mortgage and the Agreement.

ARACELY MARTINEZ has been assigned as your relationship manager and will be your designated representative for resolution inquiries and submission of documents.

Sincerely,

Ocwen Loan Servicing, LLC

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is not intended as and does not constitute an attempt to collect a debt.*

436988



# MAKING HOME AFFORDABLE

---

Homeowner's HOPE™ Hotline
If you have questions about the program that your servicer cannot answer or need further
counseling, call the Homeowner's HOPE™ Hotline at 1-888-995-HOPE (4673). The Hotline
can help with questions about the program and offers access to free HUD-certified
counseling services in English and Spanish.

---



---

## NOTICE TO BORROWERS

Be advised that you are signing the following documents under penalty of perjury. Any misstatement of material fact made in
the completion of these documents including but not limited to misstatement regarding your occupancy in your home,
hardship circumstances, and/or income will subject you to potential criminal investigation and prosecution for the following
crimes: perjury, false statements, mail fraud, and wire fraud. The information contained in these documents is subject to
examination and verification. Any potential misrepresentation will be referred to the appropriate law enforcement authority for
investigation and prosecution.

By signing the enclosed documents you certify, represent and agree that:

"Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement,
including the documents and information regarding my eligibility for the program, are true and correct."

---

## SIGTARP Hotline
If you are aware of fraud, waste, abuse, mismanagement or misrepresentations affiliated with the Troubled Asset Relief
Program, please contact the SIGTARP Hotline by:

> Online Form: www.SIGTARP.gov
> Phone: 877-SIG-2009 (toll-free)
> Fax: 202-622-4559
> Mail to: Hotline
> Office of the Special Inspector General For The Troubled Asset Relief Program 1500
> Pennsylvania Ave., NW, Suite 1064 Washington, D.C. 20220

For all other inquiries related to your mortgage, please contact your Lender



*Ocwen Loan Servicing, LLC*
HELPING HOMEOWNERS IS WHAT WE DO!™
WWW.OCWEN.COM

**SUMMARY** Modified mortgage

**NEW PRINCIPAL BALANCE.** Any past due amounts as of the end of the trial period, including unpaid interest, real estate taxes, insurance premiums, and certain assessments paid on your behalf to a third party, will be added to your mortgage loan balance. **If you fulfill the terms of the trial period including, but not limited to, making any remaining trial period payments, we will waive ALL late charges that have accrued and remain unpaid at the end of the trial period.**

**INTEREST RATE.** The interest rate on your modified loan will be adjusted as noted in the attached Modification Agreement.

**ESCROW ACCOUNT.** The terms of your Modification Agreement require the servicer to set aside a portion of your new monthly payment in an escrow account for payment of your property taxes, insurance premiums and other required fees. Any prior waiver of escrows by your lender is no longer in effect. Ocwen will draw on this account to pay your real estate taxes and insurance premiums as they come due. Please note that your escrow payment amount will adjust if your taxes, insurance premiums and/or assessment amounts change, so the amount of your monthly payment that Ocwen must place in escrow will also adjust as permitted by law. This means that your monthly payment may change. Your initial monthly escrow payment will be included in the loan payment noted in the enclosed Agreement; you do not need to remit this amount separately.

**PAYMENT SCHEDULE.** The enclosed Modification Agreement includes a payment schedule in Section 3 showing your payment plan for the life of your modified loan after the trial period.

**NO FEES.** There are no fees under the Home Affordable Modification Program.

**REPRESENTATIONS.** Please read the enclosed Modification Agreement carefully and make sure that you understand it and that the statements set forth in the "My Representations" section are true and accurate. If you have any questions, please contact us at 1 (800) 746-2936

**BORROWER INCENTIVE.** [ONLY APPLIES IF ALL CONDITIONS BELOW HAVE BEEN SATISFIED] If you make your monthly mortgage payments on time, you will accrue a monthly benefit equal to the lesser of: (i) $83.33 or (ii) one-half of the reduction in the monthly mortgage payment. As long as your mortgage loan does not become 90 days delinquent, we will apply your accrued monthly benefit to your mortgage loan and reduce your principal balance after each of the first through fifth anniversaries of the month in which the trial period plan is executed. If your modified mortgage loan ever becomes 90 days delinquent, you will lose all accrued but unapplied principal reduction benefits and will no longer be eligible to accrue additional principal reduction benefits even if the mortgage loan is later brought current.

**AGREEMENT.** You must return two signed original Modification Agreements to Ocwen by the due date provided in Step 1.

---

**MAIL AGREMENTS TO:**
OCWEN LOAN SERVICING, LLC
ATTN: HAMP MODIFICATIONS
1661 WORTHINGTON ROAD
SUITE 100
WEST PALM BEACH, FLORIDA 33409

---

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is not intended as and does not constitute an attempt to collect a debt.*

PRA

G   I have made or will make all payments required under a Trial Period Plan or Loan Workout Plan; and

H.   In cases where I received a discharged in a Chapter 7 bankruptcy proceeding subsequent to the execution of the Loan Documents, Servicer agrees, based on this representation, that I will not have personal liability on the debt pursuant to this Agreement.

2.   **Acknowledgements and Preconditions to Modification.** I understand and acknowledge that:

A.   TIME IS OF THE ESSENCE under this Agreement;

B.   If prior to the Modification Effective Date as set forth in Section 3 the Servicer determines that my representations in Section 1 are no longer true and correct, the Loan Documents will not be modified and this Agreement will terminate. In this event, the Servicer will have all of the rights and remedies provided by the Loan Documents; and

C.   I understand that the Loan Documents will not be modified unless and until (i) I receive from the Servicer a copy of this Agreement signed by the Servicer, and (ii) the Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Servicer will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

3.   **The Modification.** If my representations in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on 9/1/2012 (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. The Loan Documents will be modified and the first modified payment will be due on 9/1/2012.

A.   The new Maturity Date will be: 3/1/2037, at which time a final balloon payment in an amount equal to all remaining amounts owed under the Loan Documents will be due.

B.   The modified Principal balance of my Note will include all amounts and arrearages that will be past due (excluding unpaid late charges) less any amounts paid to the Servicer but not previously credited to my Loan. The new Principal balance of my Note will be $296,198.94 (the "New Principal Balance").

C.   $117,729.94 of the New Principal Balance shall be deferred (the "Deferred Principal Balance") and will be treated as a non-interest bearing principal forbearance. I will not pay interest or make monthly payments on the Deferred Principal Balance. In addition, $81,729.94 of the Deferred Principal Balance is eligible for forgiveness (the "Deferred Principal Reduction Amount"). Provided I am not in default on my new payments such that the equivalent of three full monthly payments are due and unpaid on the last day of any month, on each of the first, second and third anniversaries of 6/1/2012, the Servicer shall reduce the Deferred Principal Balance of my Note in installments equal to one-third of the Deferred Principal Reduction Amount. Application of the Deferred Principal Reduction Amount will not result in a new payment schedule. The New Principal Balance less the Deferred Principal Balance shall be referred to as the "Interest Bearing Principal Balance" and this amount is $178,469.00. Interest at the rate of 2.000% will begin to accrue on the Interest Bearing Principal Balance as of 9/1/2012 and the first new monthly payment on the Interest Bearing Principal Balance will be due on 9/1/2012. My payment schedule for the modified Loan is as follows:

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount | Total Monthly Payment | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|
| 1-Loans Maturity | 2.000% | 9/1/2012 | $540.45 | $449.39, adjusts annually after year 1 | $989.84, adjusts annually after year 1 | 9/1/2012 | 295 |
| 0 | - | - | - | - | - | - | 12 |
| 0 | - | - | - | - | - | - | 12 |
| 0 | - | - | - | - | - | #VALUE! | 12 |
| - | - | - | - | Adjusts annually | Adjusts annually | - | 12 |

*The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly.

OLS Form (rev. 5/11)
436988

• ˙ PRA

-BD-

The above terms in this Section 3.C. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable or step interest rate.

I further understand that, provided I am not in default under the terms of this Agreement and I pay my Note in full (i) any time more than 30 calendar days after the Modification Effective Date, and (ii) prior to the application of the entire Deferred Principal Reduction Amount, I shall be fully vested in and entitled to the unapplied amount of the Deferred Principal Reduction Amount and the unapplied amount shall be deducted from my payoff balance.

D.   I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

E.   If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3.C.

F.   I agree to pay in full the Deferred Principal Balance less any Deferred Principal Reduction Amount to which I am entitled, and any other amounts still owed under the Loan Documents by the earliest of: (i) the date I sell or transfer an interest in the Property, (ii) the date I pay the entire Interest Bearing Principal Balance, or (iii) the Maturity Date.

G    If I make a partial prepayment of Principal, the Servicer may apply that partial prepayment first to any Deferred Principal Balance before applying such partial prepayment to other amounts due.

4   .  **Additional Agreements.** I agree to the following:

A.   That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless a borrower or co-borrower is deceased or the Servicer has waived this requirement in writing.

B.   That this Agreement shall supersede the terms of any modification, forbearance, Trial Period Plan or Workout Plan that I previously entered into with Servicer.

C.   To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

D.   Funds for Escrow Items. I will pay to Servicer on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Servicer under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Servicer in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Servicer requires to be escrowed. These items are called "Escrow Items." I shall promptly furnish to Servicer all notices of amounts to be paid under this Section 4.D. I shall pay Servicer the Funds for Escrow Items unless Servicer waives my obligation to pay the Funds for any or all Escrow Items.

Servicer may waive my obligation to pay to Servicer Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, I shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Servicer and, if Servicer requires, shall furnish to Servicer receipts evidencing such payment within such time period as Servicer may require. My obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Servicer may exercise its rights under the Loan Documents and this Agreement and pay such amount and I shall then be obligated to repay to Servicer any such amount. Servicer may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, I shall pay to Servicer all Funds, and in such amounts, that are then required under this Section 4.D. Servicer may, at any time, collect and hold Funds in an amount (a) sufficient to permit Servicer to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a Servicer can require under RESPA. Servicer shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law. The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Servicer, if Servicer is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Servicer shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Servicer shall not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Servicer pays me interest on the Funds and applicable law permits Servicer to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Servicer shall not be required to pay me any interest or earnings on the Funds. Servicer and I can agree in writing, however, that interest shall be paid on the Funds. Servicer shall provide me, without charge, an annual accounting of the Funds as required by RESPA.

OLS Form (rev. 5/11)
                                                                  436988

-BD-

If there is a surplus of Funds held in escrow, as defined under RESPA, Servicer shall account to me for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Servicer shall notify me as required by RESPA, and I shall pay to Servicer the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Servicer shall notify me as required by RESPA, and I shall pay to Servicer the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.
Upon payment in full of all sums secured by the Loan Documents, Servicer shall promptly refund to me any Funds held by Servicer.

E.      That this Agreement constitutes notice that the Servicer's waiver as to payment of Escrow Items, if any, has been revoked, and I have been advised of the amount needed to fully fund my Escrow Account.

F.      That the Loan Documents are composed of duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

G.      That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Servicer and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

H.      That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, I agree as follows: If all or any part of the Property or any interest in it is sold or transferred without Servicer's prior written consent, Servicer may, at its option, require immediate payment in full of all sums secured by the Mortgage. However, Servicer shall not exercise this option if federal law prohibits the exercise of such option as of the date of such sale or transfer. If Servicer exercises this option, Servicer shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Servicer may invoke any remedies permitted by the Mortgage without further notice or demand on me.

I.      That, as of the Modification Effective Date, a buyer or transferee of the Property will not be permitted, under any circumstance, to assume the Loan. This Agreement may not, under any circumstances, be assigned to, or assumed by, a buyer of the Property.

J.      If under the Servicer's procedures a title endorsement or subordination agreements are required to ensure that the modified mortgage Loan retains its first lien position and is fully enforceable, I understand and agree that the Servicer will not be obligated or bound to make any modification of the Loan Documents or to execute the Modification Agreement if the Servicer has not received an acceptable title endorsement and/or subordination agreements from other lien holders, as Servicer determines necessary.

K.      That, as of the Modification Effective Date, any provision in the Note, as amended, for the assessment of a penalty for full or partial prepayment of the Note is null and void

L.      Corrections and Omissions. You agree to execute such other and further documents as may be reasonably necessary to consummate the transactions contemplated herein or to perfect the liens and security interests intended to secure the payment of the loan evidenced by the Note. If an error in the terms hereof is detected after execution of this Agreement, you understand that a corrected Agreement will be provided to you and this Agreement will be void upon notice of such error. Should you elect not to sign any such corrected Agreement, your loan will revert to the terms of your original Loan Documents.

M.      Mortgage Electronic Registration Systems, Inc. "MERS" is a separate corporation existing under the laws of Delaware and has an address and telephone number of 1901 E Voorhees Street, Suite C Danville, IL 61834, (888) 679-MERS. In cases where the Loan has been registered (solely as nominee for lender and lender's successors and assigns) with MERS and MERS is named as mortgagee in the Loan Documents, MERS, if necessary to comply with law or custom, has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Servicer including, but not limited to, releasing and canceling the mortgage loan.

PRA

-BD-

☑ *If this box is checked, Borrower(s) signature must be notarized.*

In Witness Whereof, the Servicer and I have executed this Agreement.

Sign Here → *Dale Brishey*   12 / 28 / 2012 Date
                Edward Grishey

State of Massachusetts                              )
County of _Bristol_____                            )

On ___12/25/12____ before me, _Dale Grishey_ personally appeared
____WL___a_Driving_license____, who proved to me on the basis of satisfactory evidence to
be the person(s) whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in
his/her authorized capacity, and that by his/her signature(s) on the instrument the person, or the entity upon behalf of which
the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of Massachusetts that the foregoing paragraph is true and
correct. WITNESS my hand and official seal.

Signature _____ (Seal)
Print Name: _JEFFREY SILVA_
Commission expiration date _11 / 3 / 17_

> JEFFREY SILVA
> Notary Public
> Commonwealth of Massachusetts
> My Commission Expires November 3, 2017

Personally Known_____ OR Produced Identification ✓___
Type of Identification Produced _MA ID____

---

Sign Here → _____   ___ / ___ / ___ Date

State of Massachusetts                              )
County of _____                        )
On _____ before me, _____ personally appeared
_____, who proved to me on the basis of satisfactory evidence to
be the person(s) whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in
his/her authorized capacity, and that by his/her signature(s) on the instrument the person, or the entity upon behalf of which
the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of Massachusetts that the foregoing paragraph is true and
correct. WITNESS my hand and official seal.
Signature _____ (Seal)
Print Name: _____
Commission expiration date ___ / ___ / ___

Personally Known_____ OR Produced Identification_____
Type of Identification Produced _____

OLS Form (rev. 5/11)
                                                                          436988

PRA                                                                                    -BD-

\*All individuals on the title (even if not a borrower on the note) must sign this agreement. If there are more than two title holders to this property, please have them sign below. If no other title holders exist, please leave page 6 blank and return it with the rest of the agreement.

In Witness Whereof, the Servicer and I have executed this Agreement.

Sign Here → _____          ____ / ____ / _____ Date

State of Massachusetts                    )
County of _____ )

On _____ before me, _____ _____ personally appeared
_____ ,who proved to me on the basis of satisfactory evidence to
be the person(s) whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature(s) on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of Massachusetts that the foregoing paragraph is true and correct. WITNESS my hand and official seal.
Signature _____ (Seal)
Print Name: _____
Commission expiration date ___ / ___ / _____

Personally Known_____ OR Produced Identification _____
Type of Identification Produced _____

Sign Here → _____          ____ / ____ / _____ Date

State of Massachusetts                    )
County of _____ )
On _____ before me, _____ _____ personally appeared
_____ ,who proved to me on the basis of satisfactory evidence to
be the person(s) whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature(s) on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of Massachusetts that the foregoing paragraph is true and correct. WITNESS my hand and official seal.

Signature _____ (Seal)
Print Name: _____
Commission expiration date ___ / ___ / _____

Personally Known_____ OR Produced Identification _____
Type of Identification Produced _____

_____          BY _____
Servicer

_____
Date

If applicable: _____
         Mortgage Electronic Registration Systems, Inc. – Nominee for Servicer

OLS Form (rev. 5/11)
                                                                    436988

-BD-

PRA

## BALLOON PAYMENT DISCLOSURE

Borrower(s) ("I"): Edward Grishey

Servicer ("Servicer"):

Date of first lien Security Instrument ("Mortgage") and Note ("Note"):

Loan Number:            7090247904

Property Address:       14 Algerine Street Berkley, MA 02779

THIS BALLOON PAYMENT DISCLOSURE is made this 27 day of August, 2012, and is incorporated into and shall be deemed to supplement the Loan Modification Agreement (the "Agreement") of the same date given by the undersigned Borrower(s). The Agreement contains a balloon payment provision representing the amount of the Deferred Principal Balance under the Agreement. The Agreement also contains a principal reduction feature that may reduce the Deferred Principal Balance in three equal installments of  $27,243.31 in accordance with Section 3(C) of the Agreement, provided that the Borrower remains eligible for principal reduction for the time period specified in Section 3(C) of the Agreement.

A balloon payment is a scheduled lump sum usually due at the end of the mortgage loan term that is significantly larger than the other regularly scheduled periodic payments. This means that even if I make all payments full and on time, the loan will not be paid in full by the final payment date. The amount of the balloon payment may vary depending on my payment history and adherence to Section 3(C) of the Agreement. If my loan is an adjustable rate mortgage, the amount of the balloon payment also may vary based on any interest rate changes that occur during the life of the loan.

If the Borrower remains eligible for the time period specified in the following table, the Deferred Principal Balance will be adjusted to the amounts reflected in the table.

| Duration of Eligibility | Deferred Principal Balance due on Maturity |
|---|---|
| 9/1/2012 up to 6/1/2013 | $81,729.94<br>- NO ADJUSTMENT |
| 6/1/2013 up to 6/1/2014 | $54,486.63 |
| 6/1/2014 up to 6/1/2015 | $27,243.32 |
| 6/1/2015 up to 3/1/2037 | $000.00 |

THIS CONTRACT IS NOT PAYABLE IN INSTALLMENTS OF EQUAL AMOUNTS: AN INSTALLMENT OF UP TO $81,729.94 WILL BE DUE AND PAYABLE IN FULL ON 3/1/2037, PROVIDED THAT ALL PAYMENTS ARE MADE IN ACCORDANCE WITH THE LOAN TERMS AND THE INTEREST RATE DOES NOT CHANGE FOR THE ENTIRE LOAN TERM. DEPENDING ON THE BORROWER'S ELIGIBILITY UNDER SECTION 3(C), THIS AMOUNT MAY DECREASE. The balloon payment on the loan modification I have applied for is due 295 months from the effective date of the modification.

### *Notice required by North Dakota law:*

**CAUTION TO BORROWER: IF YOU DO NOT HAVE THE FUNDS TO PAY THE BALLOON PAYMENT WHEN DUE, IT MAY BE NECESSARY FOR YOU TO OBTAIN A NEW LOAN AGAINST YOUR PROPERTY FOR THIS PURPOSE AND YOU MAY BE REQUIRED TO AGAIN PAY COMMISSION AND EXPENSES FOR ARRANGING THE LOAN. KEEP THIS IN MIND IN DECIDING UPON THE AMOUNT AND TERMS OF THE LOAN MODIFICATION THAT YOU OBTAIN AT THIS TIME.**

OLS Form (rev. 5/11)

PRA

-ᴅᴅ-

☑ *If this box is checked, Borrower(s) signature must be notarized.*

In Witness Whereof, the Servicer and I have executed this Agreement.

Sign Here → ___Edward Grishey_ Dale Grishey_ _12_ / _28_ / _2012_ Date

State of Massachusetts )
County of _Bristol_ )

On _12/28/12_ before me, _Dale Grisley_ personally appeared
_____ _Dale License_ , who proved to me on the basis of satisfactory evidence to
be the person(s) whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature(s) on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of Massachusetts that the foregoing paragraph is true and correct. WITNESS my hand and official seal.

Signature _____ (Seal)
Print Name: _JEFFREY SILVA_
Commission expiration date _11_/_3_/_17_

JEFFREY SILVA
Notary Public
Commonwealth of Massachusetts
My Commission Expires November 3, 2017

Personally Known_____ OR Produced Identification ✓
Type of Identification Produced _MA DL_

---

Sign Here → _____          ___/___/___ Date

State of Massachusetts )
County of_____ )
On _____ before me, _____ personally appeared
_____ , who proved to me on the basis of satisfactory evidence to
be the person(s) whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature(s) on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of Massachusetts that the foregoing paragraph is true and correct. WITNESS my hand and official seal.
Signature _____ (Seal)
Print Name: _____
Commission expiration date____/___/_____

Personally Known_____ OR Produced Identification_____
Type of Identification Produced_____

PRA -DD-

***All individuals on the title (even if not a borrower on the note) must sign this agreement. If there are more than two title holders to this property, please have them sign below. If no other title holders exist, please leave page 6 blank and return it with the rest of the agreement.**

In Witness Whereof, the Servicer and I have executed this Agreement.

Sign Here → ______________________ ______/______/________ Date

State of Massachusetts )
County of ______________________ )

On ____________________ before me, ____________________________personally appeared ______________________________________________,who proved to me on the basis of satisfactory evidence to be the person(s) whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature(s) on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of Massachusetts that the foregoing paragraph is true and correct. WITNESS my hand and official seal.
Signature ________________________ (Seal)
Print Name:________________________
Commission expiration date____/____/______

Personally Known_______ OR Produced Identification_______
Type of Identification Produced______________

---

Sign Here → ______________________ ______/______/________ Date

State of Massachusetts )
County of ______________________ )
On ____________________ before me, ____________________________personally appeared ______________________________________________,who proved to me on the basis of satisfactory evidence to be the person(s) whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature(s) on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of Massachusetts that the foregoing paragraph is true and correct. WITNESS my hand and official seal.

Signature ________________________ (Seal)
Print Name:________________________
Commission expiration date____/____/______

Personally Known_______ OR Produced Identification_______
Type of Identification Produced______________

---

______________________ ______________________
Servicer BY

______________________
Date

If applicable: ______________________
Mortgage Electronic Registration Systems, Inc. – Nominee for Servicer

PRA                                                                                    -DD-

## BALLOON PAYMENT DISCLOSURE

Borrower(s) ("I"): Edward Grishey

Servicer ("Servicer"):

Date of first lien Security Instrument ("Mortgage") and Note ("Note"):

Loan Number:          7090247904

Property Address:     14 Algerine Street Berkley, MA 02779

THIS BALLOON PAYMENT DISCLOSURE is made this 27 day of August, 2012, and is incorporated into and shall be deemed to supplement the Loan Modification Agreement (the "Agreement") of the same date given by the undersigned Borrower(s). The Agreement contains a balloon payment provision representing the amount of the Deferred Principal Balance under the Agreement. The Agreement also contains a principal reduction feature that may reduce the Deferred Principal Balance in three equal installments of $27,243.31 in accordance with Section 3(C) of the Agreement, provided that the Borrower remains eligible for principal reduction for the time period specified in Section 3(C) of the Agreement.

A balloon payment is a scheduled lump sum usually due at the end of the mortgage loan term that is significantly larger than the other regularly scheduled periodic payments. This means that even if I make all payments full and on time, the loan will not be paid in full by the final payment date. The amount of the balloon payment may vary depending on my payment history and adherence to Section 3(C) of the Agreement. If my loan is an adjustable rate mortgage, the amount of the balloon payment also may vary based on any interest rate changes that occur during the life of the loan.

If the Borrower remains eligible for the time period specified in the following table, the Deferred Principal Balance will be adjusted to the amounts reflected in the table.

| Duration of Eligibility | Deferred Principal Balance due on Maturity |
|---|---|
| 9/1/2012 up to 6/1/2013 | $81,729.94<br>- NO ADJUSTMENT |
| 6/1/2013 up to 6/1/2014 | $54,486.63 |
| 6/1/2014 up to 6/1/2015 | $27,243.32 |
| 6/1/2015 up to 3/1/2037 | $000.00 |

THIS CONTRACT IS NOT PAYABLE IN INSTALLMENTS OF EQUAL AMOUNTS: AN INSTALLMENT OF UP TO $81,729.94 WILL BE DUE AND PAYABLE IN FULL ON 3/1/2037, PROVIDED THAT ALL PAYMENTS ARE MADE IN ACCORDANCE WITH THE LOAN TERMS AND THE INTEREST RATE DOES NOT CHANGE FOR THE ENTIRE LOAN TERM. DEPENDING ON THE BORROWER'S ELIGIBILITY UNDER SECTION 3(C), THIS AMOUNT MAY DECREASE. The balloon payment on the loan modification I have applied for is due 295 months from the effective date of the modification.

*Notice required by North Dakota law:*

**CAUTION TO BORROWER: IF YOU DO NOT HAVE THE FUNDS TO PAY THE BALLOON PAYMENT WHEN DUE, IT MAY BE NECESSARY FOR YOU TO OBTAIN A NEW LOAN AGAINST YOUR PROPERTY FOR THIS PURPOSE AND YOU MAY BE REQUIRED TO AGAIN PAY COMMISSION AND EXPENSES FOR ARRANGING THE LOAN. KEEP THIS IN MIND IN DECIDING UPON THE AMOUNT AND TERMS OF THE LOAN MODIFICATION THAT YOU OBTAIN AT THIS TIME.**

-DD-

PRA

If I cannot pay the balloon payment when due, I may have to obtain a new loan to make the balloon payment or I may lose my property through foreclosure. Before deciding to take this loan, I will consider my ability to pay the balloon payment when it comes due. In addition, the value of the real estate securing this loan may change during the term of the loan. On the date the balloon payment becomes due, the value of the real estate may not be sufficient to secure a new loan in an amount equal to the balloon payment.

NEITHER OCWEN LOAN SERVICING, LLC NOR ANY LENDER TO WHICH THIS LOAN IS TRANSFERRED IS UNDER ANY OBLIGATION TO FINANCE THE AMOUNT OF THE BALLOON PAYMENT. THEREFORE, I MAY BE REQUIRED TO REPAY THE LOAN OUT OF ASSETS I OWN OR I MAY HAVE TO FIND ANOTHER LENDER TO REFINANCE THE LOAN.

ASSUMING THE OWNER OF MY LOAN OR ANOTHER LENDER REFINANCES THIS LOAN AT MATURITY, I WILL PROBABLY BE CHARGED INTEREST AT MARKET RATES PREVAILING AT THAT TIME AND SUCH RATES MAY BE HIGHER THAN THE INTEREST RATE PAID ON THIS LOAN. I MAY ALSO HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW MORTGAGE LOAN.

I/we have read the above disclosure and acknowledge receiving a copy by signing below.

**\*All individuals on the title (even if not a borrower on the note) must sign this agreement. If there are more than two title holders to this property, please have them sign below.**

_Dale Brisky_   SIGN    12/28/2012
Borrower              Date

_____   SIGN    _____
Borrower              Date

A True Copy By Photostatic Process
Attest:
_Talesu Sodell_
Asst Clerk of Courts

OLS Form (rev. 5/11)
436988