


COMMONWEALTH OF MASSACHUSETTS

BRISTOL, SS SUPERIOR COURT
DOCKET NO. B13-205

DALE. W. GRISHEY and EDWARD R. GRISHEY, JR., Plaintiffs

vs.

OCWEN LOAN SERVICING, LLC, and U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR THE CMLTI ASSET-BACKED PASS-THROUGH CERTIFICATES, SERIES 2007-AMC3, Defendants

PLAINTIFFS' APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND MOTION FOR PRELIMINARY INJUNCTION

## INTRODUCTION

This is an action for monetary damages and for injunctive relief to prevent the foreclosure sale of a residential property located at 14 Algerine Street, Berkley, Massachusetts. Defendant Ocwen Loan Servicing, LLC, a mortgage servicer, is proceeding with this foreclosure sale on behalf of Defendant U.S. Bank National Association, as Trustee for the CMLTI Asset-Backed Pass-Through Certificates, Series 2007-AMC3. U.S. Bank as Trustee claims ownership of the secured debt. The foreclosure sale is currently scheduled for Friday, March 15, 2013 at noon on the mortgaged premises.

The impending foreclosure sale is unlawful and unnecessary. Ocwen offered the mortgagors, Plaintiffs Dale and Edward Grishey ("the Grisheys") a permanent loan modification. The Grisheys accepted the offer. They executed and returned the loan modification agreement to Ocwen. The loan modification reinstates the mortgage and provides for future payments to Ocwen on behalf of U.S. Bank. The Grisheys seek to enforce the terms of their modification agreement.

Plaintiff Edward Grishey is a Vietnam veteran. He has suffered from a seizure disorder since his return from Southeast Asia. In 1971, the Veterans Administration classified him as permanently disabled for service-related causes. Since a car accident in 2010, Mr. Grishey has resided in a

Veterans Administration hospital in Brockton, Massachusetts. He suffers from dementia and is unable to manage his financial affairs. In December 2012, his wife, Plaintiff Dale Grishey, obtained a conservatorship order from the Bristol County Probate and Family Court. The order allows Ms. Grishey, *inter alia,* to execute legal documents on her husband's behalf.

Ocwen is proceeding with this foreclosure sale solely because Ms. Grishey could not obtain the conservatorship order and sign the loan modification agreement for her husband quickly enough to meet a deadline arbitrarily set by Ocwen. Ocwen's actions on behalf of U.S. Bank violate § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, and the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq*. In their interactions with the Grisheys, Ocwen and U.S. Bank breached the loan modification contract and the common law covenant of good faith and fair dealing. Both Defendants are liable to the Grisheys for promissory estoppel.

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter and these Defendants pursuant to G.L. c. 233A §3, c. 212 §4, c. 214 §1 and c. 240 §10A.
2. Venue lies in this county pursuant to G.L. 233§§ 1 and 8.

## PARTIES

3. Plaintiff Dale W. Grishey ("Ms. Grishey") is an individual who is the owner of property located at 14 Algerine Street, Berkley, Massachusetts. Ms. Grishey resides at this address.
4. Plaintiff Edward R. Grishey, Jr. ("Mr. Grishey") is an individual who is the co-owner of property located at 14 Algerine Street, Berkley, Massachusetts. Mr. and Ms. Grishey are husband and wife. Ever since he was a passenger in a serious car accident on January 4, 2010, Mr. Grishey has resided on an in-patient basis at the Veterans' Administration Hospital in Brockton, Massachusetts.
5. Mr. Grishey lacks competency to bring legal claims on his own behalf. Based on a conservatorship order from the Bristol County Probate and Family Court dated December 21, 2012, Ms. Grishey brings this action on behalf of herself and her husband.

6. Defendant U.S. Bank National Association is a national banking association with its principal place of business in Minneapolis, Minnesota. U.S. Bank operates in a number of states throughout the United States, including in Massachusetts.
7. Defendant Ocwen Loan Servicing, LLC, with its principal place of business in West Palm Beach, Florida, is a commercial loan servicing corporation that operates throughout the United States. Ocwen regularly services loans secured by properties located in Massachusetts.

**STATEMENT OF FACTS**

8. Dale Grishey and Edward Grishey ("the Grisheys") move for a preliminary injunction preventing the imminent foreclosure sale of their home located at 14 Algerine Street, Berkley, Massachusetts. The sale is scheduled for noon on March 15, 2013.
9. Defendant Ocwen Loan Servicing, LLC is the servicer for the Grisheys' mortgage, and in this capacity Ocwen controls the foreclosure process for the mortgage. Ocwen services the loan on behalf of an investment trust.
10. The pool of loans that purportedly owns the Grisheys' mortgage and note bears the name "U.S. Bank National Association, as Trustee for the CMLTI Asset-Backed Pass-Through Certificates, Series 2007-AMC3."
11. Ocwen has authority to modify the mortgage loans that it services. In April 2012, Ocwen agreed to modify the Grisheys' loan. The Grisheys were required to participate in a trial payment plan in order to finalize their acceptance of Ocwen's modification offer. The Grisheys made the three trial payments in timely fashion.
12. By a notice dated August 27, 2012, Ocwen notified the Grisheys that they met all qualifications for a permanent loan modification under the Making Home Affordable Program ("HAMP"). The modified loan reduced the Grisheys' monthly payment to an affordable level, cured the arrearage the Grisheys owed, and brought the loan into current paying status.
13. Ocwen and U.S. Bank as Trustee are now proceeding with a foreclosure sale solely because the Grisheys did not sign and return the permanent modification agreement immediately upon receipt of it. There were compelling reasons why the Grisheys could not do this.

14. Plaintiff Edward Grishey lacks competence to sign legal documents. He has been residing in a Veterans' Administration Hospital since 2010. He is a Vietnam veteran who has been designated as 100% permanently disabled for service related causes since 1971. His seizure disorder was exacerbated by serious injuries he suffered in a 2010 motor vehicle accident. He currently suffers from dementia.
15. After Ms. Grishey received the final loan modification document from Ocwen, she obtained an order of conservatorship over her husband from the Bristol County Probate and Family Court. In requesting the order she worked with the attorney representing her family in a lawsuit resulting from the 2010 motor vehicle accident. The conservatorship order allowed Ms. Grishey to sign Ocwen's modification form on behalf of herself and her husband. On December 28, 2012 she forwarded the signed loan modification agreement and a copy of the conservatorship order to Ocwen.
16. Although Ocwen was aware of the difficulties Ms. Grishey was facing in obtaining signing authority for her disabled husband, Ocwen made no accommodations for these circumstances. On October 9, 2012 Ocwen sent the Grisheys a notice revoking the loan modification agreement. Ocwen then proceeded with foreclosure, scheduling the auction sale first for January 2, 2013, then rescheduling it for February 26, 2013, which has now been postponed to March 15, 2013.
17. The HAMP loan modification program requires that participating mortgage servicers, such as Ocwen, perform a "net present value" test in reviewing a borrower for a loan modification. The test uses industry statistical data plus borrower-specific and property-specific information to calculate whether the affordable modification is more likely to benefit investors who own the loan than proceeding with foreclosure of the unmodified loan.
18. In the Grisheys' case, their modification passed the net present value test. This meant that investors would suffer a greater loss from a foreclosure than from modification. Under the HAMP program guidelines, Ocwen must evaluate all borrowers in default for HAMP and implement the modification for all borrowers who qualify for HAMP and pass the net present value test. HAMP guidelines prohibit servicers from foreclosing upon HAMP-eligible borrowers. This case presents an instance where a mortgage servicer is proceeding with a foreclosure sale not only to the great detriment of the homeowners, but also to the detriment of

the investors who own the loan.

19. The facts supporting this Application for a Temporary Restraining Order and Motion for Preliminary Injunction are more fully set forth in the accompanying Complaint for Injunctive Relief herewith filed in this action. Plaintiffs rely on the facts as stated therein to support this Motion for exigent injunctive relief through a temporary restraining order and/or preliminary injunction preventing the sale of the property located at 14 Algerine Street, Berkeley, Massachusetts on March 15, 2013 at noon on the mortgaged premises. The accompanying Memorandum of Law set forth the legal bases in support of this Motion.

20. Plaintiffs have no adequate remedy at law which will prevent the sale of their home at a foreclosure sale on March 15, 2013 at noon on the mortgaged premises.

21. Plaintiffs will suffer irreparable harm unless Defendant U.S. Bank National Association, as Trustee for the CMLTI Asset-Backed Pass-Through Certificates, Series 2007-AMC3 is prevented from conducting a foreclosure sale of their home at a foreclosure sale on April March 15, 2013 at noon on the mortgaged premises.

22. Plaintiffs are likely to succeed on the merits of their claim for injunctive relief granting their relief to prevent the sale of their home at a foreclosure sale March 15, 2013 at noon on the mortgaged premises.

23. In balancing the equities, the scales would tip in favor of Plaintiffs, in that the harm they face absent preliminary relief far outweighs any harm that Defendants might assert. The foreclosure sale will permanently deprive the Grisheys of title to their property, causing damage that as a matter of law is irreparable. As she is undergoing cancer treatment at this time, Ms. Grishey is particularly vulnerable to the inevitable stress evoked by the threatened loss of her home.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray that this Court:

1. Accept jurisdiction over this action;
2. Enter a temporary restraining order, preliminary injunction and permanent injunction, or any appropriate writ, preventing the foreclosure sale of 14 Algerine Street, Berkeley, Massachusetts

scheduled for March 15, 2013 on the mortgaged premises;

3. Schedule a hearing for review of the relief more fully requested and set forth in the accompanying Verified Complaint for Injunctive Relief herewith filed in this action;
4. Award such other relief as this Court deems just and proper.

Dated: February 28, 2013

Respectfully Submitted,

Dale W. Grishey and Edward R. Grishey, Jr.,
By their attorney,

Sara M. Quinn

SARA M. QUINN, BBO# 554154
South Coastal Counties Legal Services, Inc.
22 Bedford Street, First Floor
Fall River, MA 02720
Tel. (508)676-6265

Attorneys for Plaintiffs

#3

**COMMONWEALTH OF MASSACHUSETTS**

**BRISTOL, SS**

**SUPERIOR COURT**
**DOCKET NO.**
B13-205

**DALE. W. GRISHEY and**
**EDWARD R. GRISHEY, JR.,**
**Plaintiffs**

**vs.**

**OCWEN LOAN SERVICING, LLC,**
**and U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR THE CMLTI ASSET-BACKED PASS-THROUGH CERTIFICATES, SERIES 2007-AMC3,**
**Defendants**

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND MOTION FOR PRELIMINARY INJUNCTION**

## FACTUAL BACKGROUND

Pursuant to Mass R. Civ. P. 65(a) Plaintiffs Edward and Dale Grishey ("the Grisheys") move for a preliminary injunction preventing the imminent foreclosure sale of their home located at 14 Algerine Street, Berkley, Massachusetts. The sale is scheduled for noon on March 15, 2013. Defendant Ocwen Loan Servicing, LLC is the servicer for the Grisheys' mortgage, and in this capacity Ocwen controls the foreclosure process for the mortgage. Ocwen services the loan on behalf of an investment trust. The pool of loans that purportedly owns the Grisheys' mortgage and note bears the name "U.S. Bank National Association, as Trustee for the CMLTI Asset-Backed Pass-Through Certificates, Series 2007-AMC3."

Ocwen has authority to modify the mortgage loans that it services. In April 2012, Ocwen agreed to modify the Grisheys' loan. The Grisheys were required to participate in a trial payment plan in order to finalize their acceptance of Ocwen's modification offer. The Grisheys made the three trial payments in timely fashion. By a notice dated August 27, 2012, Ocwen

notified the Grisheys that they met all qualifications for a permanent loan modification under the Making Home Affordable Program ("HAMP"). The modified loan reduced the Grisheys' monthly payment to an affordable level, cured the arrearage the Grisheys owed, and brought the loan into current paying status.

Ocwen and U.S. Bank as Trustee are now proceeding with a foreclosure sale solely because the Grisheys did not sign and return the permanent modification agreement immediately upon receipt of it. There were compelling reasons why the Grisheys could not do this. Plaintiff Edward Grishey lacks competence to sign legal documents. He has been residing in a Veterans Administration Hospital since 2010. He is a Vietnam veteran who has been designated as 100% permanently disabled for service-related causes since 1971. His seizure disorder was exacerbated by serious injuries he suffered in a 2010 motor vehicle accident. He currently suffers from dementia.

After Ms. Grishey received the final loan modification document from Ocwen, she obtained an order of conservatorship over her husband from the Bristol County Probate and Family Court. In requesting the order she worked with the attorney representing her family in a lawsuit resulting from the 2010 motor vehicle accident. The conservatorship order allowed Ms. Grishey to sign Ocwen's modification form on behalf of herself and her husband. On December 28, 2012 she forwarded the signed loan modification agreement and a copy of the conservatorship order to Ocwen.

Although Ocwen was aware of the difficulties Ms. Grishey was facing in obtaining signing authority for her disabled husband, Ocwen made no accommodations for these circumstances. On October 9, 2012 Ocwen sent the Grisheys a notice revoking the loan modification agreement. Ocwen then proceeded with foreclosure, scheduling the auction sale first for January 2, 2013, rescheduling it for February 26, 2013, which was postponed, and then rescheduled for March 15, 2013.

The HAMP loan modification program requires that participating mortgage servicers, such as Ocwen, perform a "net present value" test in reviewing a borrower for a loan

modification.[1] The test uses industry statistical data plus borrower-specific and property-specific information to calculate whether the affordable modification is more likely to benefit investors who own the loan than proceeding with foreclosure of the unmodified loan. In the Grisheys' case, their modification passed the net present value test. This meant that investors would suffer a greater loss from a foreclosure than from modification. Under the HAMP program guidelines, Ocwen must evaluate all borrowers in default for HAMP and implement the modification for all borrowers who qualify for HAMP and pass the net present value test.[2] HAMP guidelines prohibit servicers from foreclosing upon HAMP-eligible borrowers.[3] This case presents an instance where a mortgage servicer is proceeding with a foreclosure sale not only to the great detriment of the homeowners, but also to the detriment of the investors who own the loan.[4]

## <u>STANDARD FOR GRANTING INJUNCTIVE RELIEF</u>

The legal standards for granting provisional injunctive relief, whether a temporary restraining order or a preliminary injunction, are essentially the same. *See e.g. Occupy Boston v. City of Boston*, 29 Mass L. Rptr. 337, 2011 WL 7460294 (Mass. Super Ct. Nov. 17, 2011). A court performs a three-part balancing test. *Packaging Industries Group, Inc. v. Cheney,* 380 Mass. 609, 66-17 (1980). First, the court evaluates the movants' claim of injury and their likelihood of success on the merits. *Id.* at 617. Second, the court determines whether failing to issue an injunction would subject the movants to irreparable injury – losses that cannot be repaired or adequately compensated upon final judgment *Id*, at 617 and n. 11. Third, "[i]f the judge is convinced that failure to issue the injunction would subject the moving party to a substantial risk of irreparable harm, the judge must then balance this risk against any similar risk of irreparable

---

[1]Making Home Affordable Program, *Handbook for Servicers of Non-GSE Mortgages Version 4.1* ch. II § 7 (Dec. 13, 2012). Available at https://www.hmpadmin.com//portal/programs/hamp.jsp#1 .

[2] Making Home Affordable Program, *Handbook for Servicers of Non-GSE Mortgages, Version 4.1* ch. II §§ 2.1, 2.2, 3(Dec. 13, 2012)

[3]*Id.*

[4]*See* Diane E. Thompson, *Foreclosing Modifications: How Servicer Incentives Discourage Loan Modifications*, 86 Wash. L. Rev. 755 (Dec. 2011); American Association of Mortgage Investors, White Paper, *The Future of the Housing Market for Consumers After the Housing Crisis: Remedies to Restore and Stabilize America's Mortgage and Housing Markets* (Jan. 2011) *available at* http://the-ami.com/wp-content/uploads/2011/01/AMI_State_AG Investigation_ Remedy_Recommendations_Jan_2011.pdf.

harm which granting the injunction would create for the opposing party." *Id.* at 617. In balancing these factors, "[w]hat matters as to each party is not the raw amount of irreparable harm the party might conceivably suffer, but rather the risk of such harm in light of the party's chance of success on the merits." *Id.* Only where the balance between these risks cuts in favor of the moving party may the injunction issue. The public interest may be a fourth factor weighed by the court. *Tri-Nel Mgmt., Inc. v. Bd. Of Health of Barnstable*, 433 Mass. 217, 741 N.E. 2d 37 (2001); *Planned Parenthood League of Mass., Inc. v. Operation Rescue*, 406 Mass. 701, 705, 550 N.E. 2d 1361, 1370 (1990).

## LIKELIHOOD OF SUCCESS ON THE MERITS

***Disability-Related Reasonable Accommodation Claims***. Section 504 of the Rehabilitation Act of 1973 states that "[no] otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance…". 29 U.S.C. § 794. The Americans with Disabilities Act defines an instance of prohibited discrimination to include a "failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations." 42 U.S.C. § 12182(b)(2).

The Rehabilitation Act and the Americans with Disabilities Act require that entities make adjustments to their rules, practices, and procedures in order to permit disabled individuals access to and enjoyment of program benefits. Those accommodations are subject to some limits. The laws do not require the entity to fundamentally alter the nature of its program or the services it provides. Here, the HAMP program rules expressly require that participating servicers adhere to requirements of federal statutes requiring financial institutions to take affirmative measures to allow full participation for the disabled.[5] HAMP rules even contain a specific requirement

[5]Making Home Affordable Program, *Handbook for Servicers of Non-GSE Mortgages Version 4.1* ch. I § 1.6 (Dec. 13, 2012).

allowing servicers to take a flexible approach to signature requirements involving borrowers suffering from a mental incapacity.[6] All that the Grisheys required was a short period of additional time to allow Ms. Grishey to obtain a conservatorship order from a court so that she could sign the modification form on behalf of her disabled husband, a co-borrower on the loan papers. This accommodation would not have interfered with or burdened Ocwen's activities as a participant in the federally-funded HAMP program.

In interpreting the similar obligations imposed under the federal Fair Housing Act, 42 U.S.C. §3601, *et seq.*, the Supreme Judicial Court held that "[t]o make a reasonable accommodation request, no 'magic' words are required." *Boston Housing Authority v. Bridgewaters*, 452 Mass. 833, 847-48, 898 N.E. 2d 848, 859 (2009). (referencing the 2004 Joint Statement of the Department of Justice and HUD on reasonable accommodations under the Fair Housing Act). The Rehabilitation Act applies specifically to Ocwen as a recipient of subsidies from the U.S. Treasury Department under the HAMP program.[7]*See e.g. City Wide Associates v Penfield*, 409 Mass. 140, 564 N.E. 2d 1003 (1991) (private landlord receiving federal housing subsidy payments subject to Rehabilitation Act); *Whittier Terrace Assoc. v. Hampshire*, 26 Mass. App. Ct. 102, 532 N.E. 2d 712 (1989) (reasonable accommodation under the Rehabilitation Act required of private landlord who accepted federal housing subsidies); *Granada House, Inc. v. City of Boston,* 6 Mass L. Rptr. 466, 1997 WL 106688 (Mass. Super. Feb. 28, 1997) (City's zoning law subject to Rehabilitation Act because City receives federal funds).

Here, Ocwen had more than sufficient information during September 2012 to know exactly what the problem was that the Grisheys were facing. The nature of the accommodation, allowing time for Ms. Grishey to obtain clear legal authority to sign a document for her disabled husband, should have been obvious. Ocwen's decision to cancel the loan modification agreement in October 2012 showed a brazen disregard of the needs of this disabled borrower. Ocwen's actions in proceeding to sell the family home *after* it received the properly executed documents in December 2012 displays an even more flagrant disregard of its obligations under these important federal laws.

---

[6]Making Home Affordable Program, *Handbook for Servicers of Non-GSE Mortgages Version 4.1* ch. II § 5.7 (Dec. 13, 2012).

[7]Making Home Affordable Program, *Handbook for Servicers of Non-GSE Mortgages Version 4.1* ch. II § 13.1(Dec. 13, 2012) (describing servicer incentive payments under HAMP).

***Enforcement of Loan Modification Contract.*** The transactions between the Grisheys and Ocwen (as agent for U.S. Bank as Trustee) during 2012 established a binding contract between the parties. Ocwen and U.S. Bank as Trustee breached that contract in two number ways. Ocwen refused to implement the fully executed contract. On behalf of U.S. Bank as Trustee Ocwen is actively pursuing foreclosure.

This is not an action in which a borrower asserts a private right to action under federal law to enforce the HAMP program generally. Nor do the Grisheys raise claims to be third party beneficiaries of the servicer participation agreement between Ocwen and the Treasury Department. While some courts have rejected these types of claims[8], many of these same courts have held that borrowers may compel mortgage servicers to implement HAMP modifications that they have agreed to as a matter of state contract law.[9] Courts have also enforced servicers' promises to modify loans on the basis of promissory estoppel[10] and the duty of good faith and fair dealing.[11] In addition, courts have allowed borrowers to bring claims asserting that mortgage servicers' actions related to loan modification review constituted unfair and deceptive acts.[12]

Unlike the facts of many of the cases cited below, the Grisheys do not argue that their mortgage servicer should have reviewed them for a trial HAMP plan, but failed to consider their application for eligibility. They do not argue that their servicer failed to approve their trial plan for conversion to a permanent modification. Here, Ocwen *did approve* the Grisheys for a trial plan *and for a permanent HAMP modification*. The Grisheys complied with all terms of the trial plan. There is no question that the Grisheys were "eligible" for the final modification. Ocwen wrote up the final modification agreement and mailed it to the Grisheys. Ocwen now holds a

---

[8]Speleos v. BAC Home Loans Servicing, L.P, 755 F. Supp. 2d 304 (D. Mass. 2010).

[9] Bosque v. Wells Fargo, Bank, N.A., 762 F. Supp. 2d 342, 351 (D. Mass. 2011); Durmic v. J.P. Morgan Chase Bank NA, 2010 WL 4825632 (D. Mass. Nov. 24, 2010). *See also* Wigod v. Wells Fargo Bank, N.A., 673 F.3d 547 (7th Cir. 2012).

[10] Dixon v. Wells Fargo Bank, NA, 798 F. Supp. 2d 336, 348 (D. Mass. 2011); *In re* Lacey, 480 B.R. 13, 44 (Bankr. D. Mass. 2012)

[11] Bosque, *supra* 762 F. Supp. 2d at 353; Durmic, *supra*, 2010 WL 4825632 * 5.

[12]Kirtz v. Wells Fargo Bank, N.A., 2012 WL 5989705 * 12-13 (D. Mass. Nov. 29, 2012); Orozco v. GMAC Mortgage, 2012 WL 4581092 * 3-5 (D. Mass. Oct. 1, 2012); Blackwood v. Wells Fargo Bank, N.A., 2011 WL 1561024 * 3-4 (D. Mass. April 22, 2011); Morris v. BAC Home Loans Servicing, L.P. 775 F. Supp. 2d 255 (D. Mass. 2011); *In re* JP Morgan Chase Mortgage Modification Litigation, -- F. Supp. 2d --, 2012 WL 3059377 (D. Mass. July 27, 2012); Home Affordable Modification (HAMP) Program Contracts Litigation, 2011 WL 2637222 (D. Mass July 6, 2011).

copy of the modification agreement validly executed by the Grisheys. It is Ocwen's bad faith that has prevented implementation of the parties' contract. Based on the rulings of many courts in less clear fact patterns, the Grisheys have a strong likelihood of success on the merits of their claims asserting breach of contract, breach of the covenant of good faith and fair dealing, and promissory estoppel.

**IRREPARABLE HARM**

A foreclosure sale will terminate the Grisheys' equity of redemption, cloud title to the property, and leave Ms. Grishey, her daughter, and granddaughter facing imminent eviction. Real property is inherently unique and its sale is almost always irreparable harm. "it is well-settled in this Commonwealth that real property is unique and that money damages will often be inadequate to redress a deprivation of an interest in land." *Greenfield County Estates Tenants Ass'n Inc. v. Deep*, 423 Mass. 81, 88, 666 N.E. 2d 988 (1996). "It is settled beyond the need for citation, however, that a given piece of property is considered to be unique, and its loss is always an irreparable injury." *United Church of the Medical Center v. Medical Center Comm'n*, 689 F.2d 693, 701 (7th Cir. 1982). The foreclosure sale will permanently deprive the Grisheys of title to their property, causing damage that, as a matter of law, is irreparable. As she is undergoing cancer treatment at this time, Ms. Grishey is particularly vulnerable to the inevitable stress evoked by the threatened loss of her home. *See Homesavers Council of Greenfield Gardens, Inc. v. Sanchez,* 70 Mass. App. Ct. 453, 457 (2007) (noting emotional distress is a natural consequence to the threat of loss of housing).

**BALANCING OF HARDSHIPS**

The opposing party ultimately affected by a stay of foreclosure would be the investors in a trust managed by U.S. Bank National Association, the CMLTI Asset-Backed Pass-Through Certificates Series 2007-AMC3. In reviewing the Grisheys for a HAMP modification, Ocwen conducted a "net present value" test.[13] This test determined that the loan modification was more in the interests of the investors than proceeding with foreclosure. While Ocwen as a servicer may

---

[13]Making Home Affordable Program, *Handbook for Servicers of Non-GSE Mortgages Version 4.1* ch. II § 7 (Dec. 13, 2012).

## CONCLUSION

For the reasons set forth above, and further stated in the accompanying pleadings filed herewith, the Grisheys request that this Court enter a preliminary injunction and/or temporary restraining order, permanent injunction, or any appropriate writ preventing U.S. Bank as Trustee and Ocwen from conducting the foreclosure sale of 14 Algerine Street, Berkley, Massachusetts scheduled for March 15, 2013 or at any later date on the mortgaged premises.

Plaintiffs further request that this Court order Ocwen to enforce the terms of the Home Affordable Modification Agreement, dated August 27, 2012 and reinstate the Grisheys' monthly mortgage payments according to the terms set forth therein, and request that this Court grant all of the relief set forth in the Plaintiffs' Verified Complaint for Injunctive Relief.

Dated: February 28, 2013

Respectfully Submitted,

Dale W. Grishey and Edward R. Grishey, Jr.,
By their attorney,

SARA M. QUINN, BBO# 554154
South Coastal Counties Legal Services, Inc.
22 Bedford Street, First Floor
Fall River, MA 02720
Tel. (508)676-6265

Attorneys for Plaintiffs

A True Copy By Photostatic Process
Attest:
Asst Clerk of Courts

---

Program 14–28 (June 24, 2010) (GAO 10-634); Office of the Special Inspector General for the Troubled Asset Relief Program, SIGTARP, Quarterly Report to Congress (Oct. 26, 2010). *See also* Alan M. White, *Deleveraging the American Homeowner: The Failure of 2008 Voluntary Mortgage Contract Modifications*, 41 Conn. L. Rev. 1107 (2009)

**COMMONWEALTH OF MASSACHUSETTS**

**BRISTOL, SS**

**SUPERIOR COURT**
**DOCKET NO.** B13-205

Proposed Order TRO

Proposed TRO

**DALE. W. GRISHEY and**
**EDWARD R. GRISHEY, JR.,**
**Plaintiffs**

**vs.**

**OCWEN LOAN SERVICING, LLC, and U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR THE CMLTI ASSET-BACKED PASS-THROUGH CERTIFICATES, SERIES 2007-AMC3,**
**Defendants**

**PROPOSED**
**TEMPORARY RESTRAINING ORDER**

After review of the pleadings filed in the instant matter, and hearing arguments and testimony in the above-captioned matter, this Court hereby:

1. Accepts jurisdiction over this action;
2. Enters a temporary restraining order preventing the foreclosure sale of 14 Algerine Street, Berkeley, Massachusetts scheduled for March 15, 2013 on the mortgaged premises;
3. Schedules a hearing for review of the relief more fully requested and set forth in the accompanying Verified Complaint for Injunctive Relief herewith filed in this action;
4. This hearing is scheduled to be conducted on ________________________.

**SO ORDERED.**

DATED:

____________________
ENTERED

____________________
JUSTICE, SUPERIOR COURT

**CIVIL ACTION COVER SHEET**

DOCKET NO.(S) B13-205

**Trial Court of Massachusetts**
**Superior Court Department**
**County:** BRISTOL

PLAINTIFF(S): DALE W. GRISHEY and EDWARD R. GRISHEY JR.

DEFENDANT(S): OCWEN LOAN SERVICING, LLC and U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR THE CMLTI ASSET-BACKED PASS-THROUGH CERTIFICATES, SERIES 2007-AMC3

ATTORNEY, FIRM NAME, ADDRESS AND TELEPHONE (508) 676-6265
SARA M. QUINN, SCCLS
22 BEDFORD ST, 1ST FLOOR FALL RIVER MA
Board of Bar Overseers number: 554154

ATTORNEY (if known) HARRY CASTLEMAN ESQ. Ph: (617) 227-5660
MICHIENZIE & SAWIN, LLC
745 BOYLSTON ST., BOSTON, MA 02116

BRISTOL, SS SUPERIOR COURT
FILED
MAR - 4 2013
MARC J. SANTOS, ESQ.
CLERK/MAGISTRATE

**Origin code and track designation**

Place an x in one box only:

- [X] 1. F01 Original Complaint
- [ ] 2. F02 Removal to Sup.Ct. C.231,s.104 (Before trial) (F)
- [ ] 3. F03 Retransfer to Sup.Ct. C.231,s.102C (X)
- [ ] 4. F04 District Court Appeal c.231, s. 97 &104 (After trial) (X)
- [ ] 5. F05 Reactivated after rescript; relief from judgment/Order (Mass.R.Civ.P. 60) (X)
- [ ] 6. E10 Summary Process Appeal (X)

**TYPE OF ACTION AND TRACK DESIGNATION (See reverse side)**

| CODE NO. | TYPE OF ACTION (specify) | TRACK | IS THIS A JURY CASE? |
|---|---|---|---|
| D01 | SPECIFIC PERFORMANCE OF CONTRACT | (A) | (X) Yes ( ) No |

**The following is a full, itemized and detailed statement of the facts on which plaintiff relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.**

**TORT CLAIMS**
(Attach additional sheets as necessary)

A. Documented medical expenses to date:
1. Total hospital expenses . . . . . $ . . . . .
2. Total Doctor expenses . . . . . $ . . . . .
3. Total chiropractic expenses . . . . . $ . . . . .
4. Total physical therapy expenses . . . . . $ . . . . .
5. Total other expenses (describe) . . . . . $ . . . . .

Subtotal $ . . . . .

A True Copy By Photostatic Process
Attest: [signature]
Asst Clerk of Courts

B. Documented lost wages and compensation to date . . . . . $ . . . . .
C. Documented property damages to date . . . . . $ . . . . .
D. Reasonably anticipated future medical and hospital expenses . . . . . $ . . . . .
E. Reasonably anticipated lost wages . . . . . $ . . . . .
F. Other documented items of damages (describe)

$ . . . . .

G. Brief description of plaintiff's injury, including nature and extent of injury (describe)
ACTION FOR MONETARY DAMAGES AND FOR INJUNCTIVE RELIEF TO PREVENT FORECLOSURE SALE OF RESIDENTIAL PROPERTY AT 14 ALGERINE ST., BERKLEY, MA. THE FORECLOSURE SALE IS CURRENTLY SCHEDULED FOR FRIDAY, MARCH 15, 2013 AT NOON ON THE MORTGAGED PREMISES.

$ . . . . .

TOTAL $ . . . . .

**CONTRACT CLAIMS**
(Attach additional sheets as necessary)

Provide a detailed description of claim(s): DEFENDANTS OCWEN AND US BANK AS TRUSTEE HAVE BREACHED THE LOAN MODIFICATION CONTRACT WITH THE PLAINTIFFS, DALE AND EDWARD GRISHEY. BOTH DEFENDANTS HAVE BREACHED THE COMMON LAW COVENANT OF GOOD FAITH & FAIR DEALING AND BOTH DEFENDANTS ARE LIABLE TO THE PLAINTIFFS FOR PROMISSORY ESTOPPEL.

TOTAL $. . . . .

PLEASE IDENTIFY, BY CASE NUMBER, NAME AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR COURT DEPARTMENT

**"I hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods."**

Signature of Attorney of Record [signature: Sara M. Quinn] DATE: 2-28-13

#4

**Commonwealth of Massachusetts**
**County of Bristol**
**The Superior Court**



CIVIL DOCKET# **BRCV2013-00205**

Dale w. Grishey, Edward R. Grishey, Jr.,
Plaintiffs
vs.
Ocwen Loan Servicing, LLC, U.S. Bank National Association, as trustee for the CMLTI Asset-Backed Pass-Through Certificates, Series 2007-AMC3,
Defendants

## SUMMONS AND ORDER OF NOTICE

To the above-named:

You are hereby summoned and required to serve upon **Sara M Quinn, Esquire**, plaintiff's attorney, whose address is **22 Bedford Street 1st Floor, Fall River, MA 02720,** , an answer to the complaint which is herewith served upon you. This must be done within 20 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, Judgment by default will be taken against you for the relief demanded in the complaint. You are also required to file your answer to the complaint in the office of the Clerk of this Court at New Bedford either before service upon plaintiff's attorney or within a reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

**WE ALSO NOTIFY YOU** that application has been made in said action, as appears in the complaint, for a preliminary injunction and that a hearing upon such application will be held at the court house at said Bristol County Superior Court, in New Bedford on **03/12/2013, at 03:00 PM in CtRm B (New Bedford),** at which time you may appear and show cause why such application should not be granted.

**Witness, Barbara J. Rouse,** Esquire, Chief Justice of the Superior Court, at New Bedford, Massachusetts this 4th day of March, 2013.

..............................................................
Erin J. Tierney Assistant Clerk

**(AFFIX RETURN OF SERVICE ON BACK OF SUMMONS)**

**A True Copy By Photostatic Process**
**Attest:**
**Asst Clerk of Courts**

**COMMONWEALTH OF MASSACHUSETTS**

**BRISTOL, SS** | **SUPERIOR COURT DOCKET NO.** B13-205

BRISTOL, SS SUPERIOR COURT
FILED
MAR - 4 2013
MARC J. SANTOS, ESQ.
CLERK/MAGISTRATE

**DALE. W. GRISHEY and EDWARD R. GRISHEY, JR.,**
**Plaintiffs**

**vs.**

**OCWEN LOAN SERVICING, LLC, and U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR THE CMLTI ASSET-BACKED PASS-THROUGH CERTIFICATES, SERIES 2007-AMC3,**
**Defendants**

**PLAINTIFFS' MOTION FOR SHORT ORDER OF NOTICE**

Plaintiffs hereby request that this Court issue a Short Order of Notice on Plaintiffs' Application for a Temporary Restraining Order and Motion for Preliminary Injunction. At present, foreclosure on the Plaintiffs' home is scheduled for March 15, 2013.

Pursuant to Mass. R. Civ. P. 65, Plaintiffs request a hearing on the within pleadings as soon as possible. After the filing of these enclosed pleadings, copies thereof and any documents issued by this Court will be served on the Defendants, through counsel, by Express Mail.

Date: February 28, 2013

Respectfully Submitted,

Sara M. Quinn

SARA M. QUINN, BBO# 554154
South Coastal Counties Legal Services, Inc.
22 Bedford Street, First Floor
Fall River, MA 02720
Tel. (508)676-6265

Attorney for Plaintiffs

A True Copy By Photostatic Process
Attest: Valerie R. Sodano
Asst Clerk of Courts

3/4/13 Summary order issued returnable Tuesday March 12, 2013 at 3 pm. Justice ... Asst Clerk Magistrate

**Commonwealth of Massachusetts**
**County of Bristol**
**The Superior Court**

CIVIL DOCKET# **BRCV2013-00205**

Dale w. Grishey, Edward R. Grishey, Jr.,
Plaintiffs
vs.
Ocwen Loan Servicing, LLC, U.S. Bank National Association, as trustee for the CMLTI Asset-Backed Pass-Through Certificates, Series 2007-AMC3,
Defendants

## SUMMONS AND ORDER OF NOTICE

To the above-named:

You are hereby summoned and required to serve upon **Sara M Quinn, Esquire**, plaintiff's attorney, whose address is **22 Bedford Street 1st Floor, Fall River, MA 02720,** , an answer to the complaint which is herewith served upon you. This must be done within 20 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, Judgment by default will be taken against you for the relief demanded in the complaint. You are also required to file your answer to the complaint in the office of the Clerk of this Court at New Bedford either before service upon plaintiff's attorney or within a reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

**WE ALSO NOTIFY YOU** that application has been made in said action, as appears in the complaint, for a preliminary injunction and that a hearing upon such application will be held at the court house at said Bristol County Superior Court, in New Bedford on **03/12/2013, at 03:00 PM in CtRm B (New Bedford),** at which time you may appear and show cause why such application should not be granted.

**Witness, Barbara J. Rouse,** Esquire, Chief Justice of the Superior Court, at New Bedford, Massachusetts this 4th day of March, 2013.

..............................................................
Erin J. Tierney Assistant Clerk

**(AFFIX RETURN OF SERVICE ON BACK OF SUMMONS)**

**Disabled individuals who need handicap accommodations should contact the Administrative Office of the Superior Court at (617) 788-8130** cvcsumornot_2.wpd 205823 hrgpin tierneye

13051 37

**Suffolk County Sheriff's Department** • 132 Portland Street, Boston, MA 02114 • (617) 704-6999

*Suffolk, ss.*

March 6, 2013

I hereby certify and return that on 3/5/2013 at 2:55 PM I served a true and attested copy of the Summons and Order of Notice, Verified Complaint, Cover Sheet, Motion, Application, Memorandum, Proposed Temporary Order & Preliminary Injunction in this action in the following manner: To wit, by delivering in hand to C.Hallak Process Clerk agent, person in charge at the time of service for Ocwen Loan Servicing, LLC, c/o Corporation Service Company 84 State Street Boston, MA 02109 . Attest/Copies ($5.00) Basic Service Fee ($30.00) Postage and Handling ($1.00) Travel ($22.88) Total: $58.88

Deputy Sheriff John Cotter

John Cotter

Deputy Sheriff